Filed 3/6/13  P. v. Anguiano CA4/1
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND ANGUIANO, SR.,<br><br>    Defendant and Appellant. | D058578<br><br><br>(Super. Ct. No. FWV033802) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Gerard S. Brown, Judge.  Reversed in part, affirmed in part, and remanded for resentencing.

I.

INTRODUCTION

A jury found defendant Raymond Anguiano, Sr., guilty of possession of a firearm by a felon; possession of methamphetamine; possession of heroin; resisting, obstructing,

or delaying an officer; and street terrorism. Anguiano's street terrorism conviction is based on his conduct on the day he possessed personal use amounts of methamphetamine and/or heroin and resisted an officer.[1] The evidence that the prosecution presented to prove the street terrorism charge is that Anguiano was sitting alone, on a porch, when he noticed police officers approaching him. Anguiano attempted to flee from the officers and threw the drugs over a fence. It is undisputed that Anguiano, a documented gang member, was alone at the time.

In this appeal, Anguiano contends that (1) there is insufficient evidence to support his conviction for street terrorism; (2) the trial court erred in failing to grant a new trial with respect to the count charging him with street terrorism; (3) the trial court erred in failing to instruct the jury that it must unanimously agree on which act formed the basis of the street terrorism offense; (4) the trial court erroneously instructed the jury that it could rely on misdemeanor conduct as the "felonious" conduct necessary to support a conviction for street terrorism; (5) the trial court erred in not granting a new trial on the ground that trial counsel was ineffective in failing to bring a motion to suppress the gunshot residue found on Anguiano, relating to the firearm he was found guilty of possessing; (6) the trial court did not understand that it possessed the discretion to strike only some, and not all, of Anguiano's prior strike convictions; and (7) he was not validly convicted of a serious or violent felony in the present case because only the street terrorism offense constitutes a serious or violent felony and, he maintains, there was

---

[1] The felon in possession of a firearm conviction is based on conduct occurring on a different day.

insufficient evidence to support that conviction, such that the court erred in imposing the three five-year terms pursuant to Penal Code[2] section 667, subdivision (a); in the alternative, Anguiano argues that if the street terrorism conviction is not reversed, the court should have imposed only two of the additional five-year enhancement terms because the court found true that he had suffered only two prior serious felonies.

We initially filed an opinion in this matter on September 25, 2012. In that opinion, we concluded that there was insufficient evidence to support Anguiano's conviction for street terrorism, concluding that a defendant cannot be convicted of street terrorism where the evidence shows only that the defendant was the sole perpetrator of a felony that is concededly not gang-related. The Supreme Court granted the People's petition for review and transferred the case back to this court with directions to reconsider our opinion in light of *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*).

The Supreme Court's decision in *Rodriguez* affirms our prior conclusion that Anguiano may not be convicted for street terrorism based on his possession of personal use quantities of drugs while alone on the porch.[3] Accordingly, we again reverse Anguiano's conviction for street terrorism as charged in count 6. We therefore need not consider Anguiano's other claims with respect to that offense, nor his claims pertaining to

---

[2]     Further statutory references are to the Penal Code unless otherwise indicated.

[3]     The jury did not convict Anguiano of the charged felony offense of resisting an executive officer, but rather, of a lesser included misdemeanor offense. Therefore, his conduct in resisting an officer cannot be the "felonious conduct" supporting a conviction for street terrorism under subdivision (a) of section 186.22. The only other felonious conduct that could support his conviction under subdivision (a) of section 186.22 is his possession of personal use quantities of methamphetamine and heroin.

his sentence, since the trial court will have to resentence him on remand. We otherwise affirm the judgment, and remand the matter for resentencing.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

1. *The January 12, 2005 incident*

In the late afternoon of January 12, 2005, law enforcement officers were driving to a home in Rancho Cucamonga to perform a parole check on Anguiano's nephew. The officers were wearing plain clothes and were driving an unmarked vehicle. As the officers neared the nephew's residence, they saw Anguiano and another man walking toward the residence. Deputy Joe Braattan and Parole Agent Ardrick Elmore recognized Anguiano from previous contacts with him. Anguiano made eye contact with the officers, dropped a bowl of soup that he had been eating, and started running away. Braattan and Elmore jumped out of the vehicle and began to chase Anguiano.

Anguiano first ran north, then turned a corner and ran through an open gate. Deputy Braattan caught up with Anguiano and ordered him to stop, but Anguiano continued running. The officers watched Anguiano jump over fences as he tried to escape.

Agent Elmore caught up with Anguiano, drew his gun, and ordered Anguiano to drop to the ground. Anguiano stopped running, but did not comply with the order to get on the ground. Deputy Braattan then used a taser to stun Anguiano and ultimately apprehended him.

4

After officers detained Anguiano, Deputy Braattan retraced the path that Anguiano had taken during the chase. Along the route, Braattan found a semiautomatic handgun, a loaded ammunition clip with one expended round, and a cigarette lighter. Braattan did not see any dirt, moisture or other debris on any of these items.

Officers transported Anguiano to the police station where his blood was drawn and he was tested for gunshot residue. Anguiano's blood tested positive for methamphetamine, cocaine, and opiates consistent with heroin. In addition, "one unique" particle of gunshot residue was found on Anguiano's left hand.

2.      *The February 1, 2005 incident*

On the morning of February 1, 2005, several law enforcement officers drove to the same residence in Rancho Cucamonga in order to perform a parole check on another of Anguiano's nephews. After parking their vehicle nearby, the officers started to walk toward the house and saw Anguiano sitting on the front porch, looking down at something in his hands.[4] When Anguiano looked up and saw the approaching officers, he jumped up and ran into the residence.

Several officers chased Anguiano through the house and out the back door, into the backyard. Anguiano threw a cell phone and some plastic bags over a fence. Deputies apprehended Anguiano near a garage in back of the house.

In his pockets, Anguiano had a syringe, a spoon with a cotton ball stuck to it, and a bag of marijuana. Anguiano also had two marks on his forearm that appeared to be fresh

---

[4]     It is not clear from the record why Anguiano, who had been arrested a few weeks prior to this incident, was not in custody at this point in time.

needle injection sites that were bleeding. Deputy Paul Gallant recovered the cell phone and bags that Anguiano had tossed over the fence. The bags contained usable amounts of methamphetamine, heroin, and marijuana.

B.    *Procedural background*

Anguiano was charged with possession of a firearm by a felon (§ 12021, subd. (a)(1); count 1); possession of a firearm while under the influence (Health & Saf. Code, § 11550, subd. (e); count 2); possession of a controlled substance, i.e., methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 3); possession of a controlled substance, i.e., heroin (Health & Saf. Code, § 11350, subd. (a); count 4); resisting an executive officer (§ 69; count 5); and street terrorism (§ 186.22, subd. (a); count 6). Counts 1 and 2 related to the events of January 12, 2005, while counts 3 through 6 related to the February 1, 2005 incident.

The information alleged that Anguiano committed count 1, possession of a firearm by a felon, for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)). In addition, the information alleged that Anguiano had served four prior prison terms (§ 667.5, subd. (b)), that he had eight prior strike convictions (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and that he had been convicted of three prior serious felony convictions (§ 667, subd. (a)(1)).

Jury trial commenced on September 24, 2007. The jury found Anguiano guilty on counts 1, 3, 4 and 6, as charged. With respect to count 5, the jury found Anguiano guilty of the lesser included offense of resisting, obstructing or delaying an officer in violation

of section 248, subdivision (a)(1).[5]  The jury acquitted Anguiano on count 2, and the

court declared a mistrial with respect to the gang enhancement allegation connected to

count 1 after the jury was unable to reach a verdict as to that enhancement.

The trial court found all of the alleged prior conviction allegations to be true.

Anguiano filed a motion for a new trial, which the court denied.

The trial court sentenced Anguiano to 25 years to life on count 6, and added three

consecutive five-year enhancements for three prior serious felony convictions.  The court

imposed an additional consecutive term of 25 years to life with respect to count 3, plus

four years for the four prison priors, as well as a concurrent term of 25 years to life plus

four years with respect to count 4.  With respect to count 1, the trial court imposed and

stayed (pursuant to § 654) a term of 25 years to life plus four years.[6]  The total prison

term amounted to 69 years to life.

Anguiano filed a timely notice of appeal.  We filed an opinion in this matter on

September 25, 2012, in which we concluded that reversal of Anguiano's conviction on

count 6 and resentencing on the remaining counts was in order.  We certified the opinion

for publication on October 22, 2012.  The Supreme Court subsequently issued its opinion

---

[5]     The trial court later dismissed count 5 pursuant to section 1118.1.

[6]     The trial court incorrectly stayed Anguiano's sentence on count 1 pursuant to
section 654, apparently based on the erroneous presumption that the street terrorism
charge in count 6 was predicated on the same conduct as the felon in possession of a
firearm charge in count 1.  However, as the charging document makes clear, the street
terrorism charge in count 6 is based on his criminal conduct on February 1, 2005, while
the felon in possession of a firearm charge in count 1 is based on Anguiano's conduct on
January 12, 2005, nearly three weeks earlier.

in *Rodriguez, supra*, 55 Cal.4th 1125 in late December 2012, granted review in this case, and transferred it back to our court for reconsideration in light of *Rodriguez.*

III.

DISCUSSION

Anguiano raises several grounds for reversing his convictions on counts 1 and 6, and also raises claims of error related to his sentence.

We conclude that there is insufficient evidence to support Anguiano's conviction for street terrorism as alleged in count 6. We therefore reverse his conviction on that count.[7] The enhancements associated with count 6 are necessarily reversed as well.[8] However, we conclude that Anguiano's trial counsel did not provide ineffective assistance in failing to move to suppress the gunshot residue, and therefore affirm Anguiano's conviction on count 1.

A.     *Anguiano's conviction for street terrorism in count 6 must be reversed*

Anguiano was convicted of the substantive offense of street terrorism, under subdivision (a) of section 186.22. Subdivision (a) of section 186.22 states in pertinent part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and

---

[7]     As a result, we need not consider Anguiano's alternative claims as to why his conviction on count 6 should be reversed.

[8]     In addition, we need not address Anguiano's contention that the trial court failed to understand its discretion with respect to striking Anguiano's prior strikes, although we note that the record does not appear to support Anguiano's claim. We presume that on remand for resentencing, the court will properly exercise its discretion with respect to whether to strike any, some, or none of Anguiano's prior strikes.

8

who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished as a felony or misdemeanor."

Based on the statutory language, the substantive offense of street terrorism defined in section 186.22, subdivision (a) has three elements:  "[(1)] Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive . . . [,] [(2)] 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and [(3)] . . . 'willfully promot[ing], further[ing], or assist[ing] in any felonious criminal conduct by members of that gang.'  (§ 186.22(a).)" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)  Anguiano does not dispute that there was sufficient evidence presented at trial to support the first two elements of this offense— i.e., that he was an active participant in a criminal street gang, and that he had knowledge that his gang's members engaged in or have engaged in a pattern of criminal gang activity.  However, Anguiano contends that there was not sufficient evidence that in committing the offenses charged in this case, he "willfully promote[d], further[ed], or assist[ed] in . . . felonious criminal conduct by members of [his] gang" (§ 186.22, subd. (a)).

In *Rodriguez, supra*, 55 Cal.4th 1125, the Supreme Court considered whether a defendant violates section 186.22, subdivision (a) "if he commits a felony, but acts alone[.]"  (*Rodriguez, supra*, at p. 1128.)  The Supreme Court determined that in order "to satisfy the third element [of section 186.22, subdivision (a)], a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct" and concluded that "section 186.22, subdivision (a) requires that

9

felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Rodriguez, supra,* at p. 1132.)

As we explained in our prior opinion, in this case the People *concede* that there were no other gang members involved in the felonious conduct underlying the street terrorism charge for which Anguiano was convicted.[9] It is clear that under *Rodriguez, supra*, 55 Cal.4th at page 1139, a defendant may not be convicted of violating section 186.22, subdivision (a) when he acts alone in committing the felonious conduct intended to support the street terrorism charge. We therefore reverse Anguiano's conviction for street terrorism in count 6. The enhancements associated with count 6 are necessarily reversed, as well.

B.    *Trial counsel did not render ineffective assistance by not moving to suppress the gunshot residue*

Anguiano contends that his trial court rendered ineffective assistance by failing to bring a motion to suppress the gunshot residue found on him immediately after the January 12, 2005 incident. According to Anguiano, if his attorney had made such a motion, the court would likely have granted it because officers did not have reasonable suspicion to stop him on January 12, 2005. We conclude that Anguiano's trial counsel

---

9      The People argue in their appellate briefing that there is sufficient evidence to support Anguiano's conviction for street terrorism "even though the evidence presented demonstrated that appellant was an active gang member committing a nongang related offense *by himself*." (Italics added.)

10

did not provide ineffective assistance in failing to bring this motion because doing so would have been futile.

During closing argument, the prosecutor argued that the gunshot residue found on Anguiano constituted evidence that he had possessed a gun. The jury ultimately convicted Anguiano of count 1, possession of a firearm by a felon. Anguiano subsequently fired his trial counsel. His new trial attorney filed a motion for a new trial, arguing that Anguiano's former attorney had provided ineffective assistance by failing to move to suppress the results of the gunshot residue test that was performed after Anguiano's January 12, 2005 arrest. At a hearing, Anguiano's former attorney testified that Anguiano had asked him to move to suppress the gunshot residue test results. The attorney stated that he had not filed a motion to suppress the results of the gunshot residue test because he believed that a motion to suppress would not have been granted. Specifically, the attorney believed that since police had found the gun along Anguiano's flight path prior to arresting Anguiano, the gun could not have been found as a result of the arrest. The trial court determined that a motion to suppress would not have been meritorious, and denied Anguiano's new trial motion.

On appeal, Anguiano contends that the trial court erred in denying his motion for a new trial because his original trial counsel rendered ineffective assistance by failing to move to suppress the gunshot residue evidence.

"An appellant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance

11

resulted in prejudice. [Citations.]" (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146 (*Montoya*).) "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.] In demonstrating prejudice, the appellant 'must carry his burden of proving prejudice as a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel.' [Citation.]" (*Ibid.*)

> "In determining whether counsel's performance was deficient, we exercise deferential scrutiny. [Citations.] The appellant must affirmatively show counsel's deficiency involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics. [Citation.] [¶] Our Supreme Court recently reiterated the obligations of appellate courts in reviewing claims of ineffective assistance of counsel: ' " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." ' [Citation.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' [Citation.]" ' [Citation.]

> " 'Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances. [Citation.]' [Citation.]" (*Montoya*, *supra*, 149 Cal.App.4th at pp. 1147-1148.)

12

Anguiano cannot establish that his original trial counsel rendered ineffective assistance in failing to move to suppress the gunshot residue because, as the trial court determined, any such motion would have been futile.

Anguiano's argument is that officers did not have reasonable suspicion to seize him after they saw him and he ran. Therefore, he asserts, anything that officers found after this initial unlawful seizure of his person should have been excluded.[10] Anguiano's assertion that the officers did not have reasonable suspicion to seize him at the time they did is incorrect. When Anguiano saw the officers, he did not simply stand there and go about his business. Instead, he ran away from them. His unprovoked flight gave the officers reasonable suspicion to stop him. "[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. [Citation.] And any 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' [Citation.] [¶] But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or stay put and remain silent in the face of police questioning." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.)

---

10    Anguiano does not argue that there was no probable cause for his arrest. We therefore need not address that issue.

13

There was thus no basis to suppress the gunshot residue evidence on the ground that officers did not have reasonable suspicion to stop Anguiano when they seized him on January 12, 2005. Consequently, any motion to suppress the evidence on this ground would have been denied, and Anguiano's counsel could not have been ineffective in not making a futile motion. We therefore reject Anguiano's contention that the trial court erred in not granting his motion for a new trial on the ground that his original trial attorney failed to move to suppress the gunshot residue evidence, and affirm Anguiano's conviction on count 1 for possession of a firearm by a felon.

IV.

DISPOSITION

We reverse Anguiano's conviction on count 6. The matter is remanded to the trial court for resentencing on the remaining counts.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.