[No. D049602. Fourth Dist., Div. One. Apr. 18, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ENRIQUE MONTOYA, Defendant and Appellant.

[No. D049635. Fourth Dist., Div. One. Apr. 18, 2007.]

In re ENRIQUE MONTOYA on Habeas Corpus.

1140

## COUNSEL

Marc Elliot Grossman for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—Enrique Montoya was found guilty of continuous sexual abuse of a child in violation of Penal Code[1] section 288.5, subdivision (a), aggravated sexual assault of a child (oral copulation) in violation of section 269, subdivision (a)(4), aggravated sexual assault of a child (sodomy) in violation of section 269, subdivision (a)(3), aggravated sexual assault of a child (forcible penetration) in violation of section 269, subdivision (a)(5), and dissuading a witness from testifying in violation of section 136.1, subdivision (a)(1). He was sentenced to 64 years to life in prison: a total indeterminate sentence of 45 years to life and a total determinate sentence of 19 years. Montoya appeals, arguing he was denied his Sixth Amendment rights because his counsel's pretrial performance amounted to prejudicial ineffective assistance of counsel, which subsequently led to the admission of evidence from a witness he argues was likely incompetent.

Montoya also petitions for a writ of habeas corpus. In the petition, he contends he received ineffective assistance of counsel because his counsel failed to pursue a "taint hearing" to determine the complaining witness's competency and credibility prior to trial.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Due to the similarity of the issues, we have consolidated consideration of the writ petition and the appeal.

Along with the appeal, appellant has filed two motions requesting this court take judicial notice of "Scientific Publications and Other Non-legal Publications" (exhibits A–G) and the "Declaration of Ernest Hales" (exhibit H), items not contained in the appellate record. However, because exhibits A through H are also before the court as exhibits attached to appellant's petition for writ of habeas corpus, the requests for judicial notice are moot.

## BACKGROUND

### A. *Undisputed Facts*

Rita A. has several children, including Christina who was born in April 1993. During the summer of 1999, Rita and her children moved in with appellant and his mother in Las Vegas. In August 2000, appellant, Rita and her children moved to San Bernardino County where they lived with family for a few months. In October 2000 Rita and her children moved into a home of their own. Early in 2001 Rita gave birth to a daughter, Martha. Appellant was Martha's father.

Appellant, Rita and the children lived together in San Bernardino County until April 2002 when they moved back to Las Vegas to live with Rita's mother. Two to three weeks later, appellant moved out of the house. When Rita and appellant lived together between August 2000 and April 2002, appellant stayed home with the children while Rita worked afternoons and evenings.

In September 2002 Rita and her children moved back to San Bernardino County but did not live with appellant. At that point in time, appellant lived with his sister in Los Angeles but came to Rita's home to pick up and visit Martha.

### B. *Prosecution Case*

The principal prosecution witness was Christina. According to Christina she was approximately eight years old when appellant would awaken her while Rita was at work and take her into the living room where he touched and licked her vagina, rubbed his penis against her vagina and anus, and forced her to lick his penis. While touching Christina, appellant would masturbate to ejaculation, telling her he was "jacking off." Once, appellant tried to penetrate Christina's anus with his penis and refused to stop when Christina said it hurt. These acts occurred more than once a week and at least 10 times. If Christina tried to pull away, appellant forced her to continue, sometimes pushing her head onto his penis. One time when Christina resisted, appellant hit her, and on other occasions he threatened to hurt her if she did not do what he wanted.

In November 2003, while appellant was at their house visiting Martha, Rita needed to go to the store. Christina "flipped out" because she did not want to be left at home with appellant. However, Rita made Christina stay at home, and after she left, appellant took Christina into the bathroom where he removed her pants and put his mouth on her vagina. Christina told appellant to stop, but he refused.

As a result of appellant's threats to kill her if she told anyone, Christina did not come forward with these allegations for a long time. However, on May 2, 2004, because she was afraid appellant would subject her three-year-old sister to the same treatment, Christina told her mother about appellant's sexual behavior and threats. Rita called the police the next day, and that evening Christina was interviewed by Officer DeLucia. Christina had requested that John Murlless, the pastor of her church, be present at the interview. Murlless said Christina was "very calm, matter of fact, [and] straight to the point" during the interview and that she provided answers to the officer's questions spontaneously.

A few days later, Christina was also interviewed by Detective Wilson. She told Wilson how appellant had touched and placed his mouth on her vagina, and how he made her touch and place her mouth on his penis. She also said that appellant had inserted his fingers into her vagina.[3] She also told Wilson about the incident that occurred while Rita was at the store and that she had not told anyone about appellant's behavior because of appellant's threats. As a result of this information, Wilson decided to use Christina to make a "pretext phone call" to the appellant in an attempt to get admissions from him.

During the call Christina told appellant she had run away and was thinking about reporting what appellant had done to her. Appellant replied: "Why? Don't do that . . . . [W]hy you gonna do all that? They'll put me in jail for the rest of my life? They'll kill me. You want them to kill me?" When Christina mentioned appellant making her put her mouth on his penis, appellant said: "Don't say nothing, ok? You don't have to worry. Nothing, nothing, why you bring it up?" Christina told appellant she did not like the things he had done to her, and appellant replied: "I'm sorry . . . . Please forgive me, forgive me . . . ." Appellant also promised that he would not do it anymore and that he would not make Christina watch him jack off anymore. Appellant also promised Christina he would not hurt Martha and told her he was not like that anymore and that he now went to church.

As soon as the call was over, appellant was contacted by Detective Lomeli, who had been waiting outside appellant's house. Lomeli confronted appellant with the allegation of him placing his penis in Christina's mouth. In response appellant denied it at times and did not say anything at other times. Appellant also told Lomeli that he was not thinking straight and could not remember. Lomeli also used a "ruse" when talking to appellant, which involved Lomeli telling appellant that foreign DNA had been found in Christina's mouth and that Wilson was going to compare it to appellant's DNA. When asked to

---

[3] Christina did not remember telling anyone this at trial.

explain how appellant's DNA could be found in Christina's mouth, appellant stated that Rita had caught Christina sucking on a dildo.

## C. *Defense Case*

Appellant testified that he had a normal sex life with women his age or older and was never attracted to children. Appellant denied ever waking Christina and taking her to the living room, removing her clothes, fondling her or engaging in sex acts with her. He believed he and Christina "had a good relationship as in father and daughter." Appellant described the breakdown of his relationship with Rita and how she limited his ability to see Martha. After going to court, appellant was granted twice-monthly visits with Martha. At times, appellant was late returning Martha because of traffic and Rita threatened that she would stop him from seeing Martha. On one occasion, appellant reported Rita to Child Protective Services because he believed she was spanking Martha with a paddle. Appellant denied visiting Martha in November 2003.

With respect to the pretext phone call, appellant said he did not know what Christina was talking about because there was a lot of static on the line. Appellant believed Christina might have been referring to instances when she would sneak into Rita's bedroom and observe Rita and appellant having sex or when Christina would walk in on them in the shower, while appellant was shaving Rita's privates. Appellant stated that Christina interfered with his sex life with Rita, and at times he had to tie Christina's bedroom door shut so she would not interrupt. When appellant was asked why he commented about never seeing Martha again, he explained that because of the static, he was not sure what Christina was saying but thought he might get in trouble if Christina ever told anyone what she saw appellant and Rita doing. Appellant tried to explain his comment about being put in jail for the rest of his life as relating to messages left on Rita's answering machine regarding Child Protective Services. When asked to explain his response to Christina's comment about making her put her mouth on his penis, appellant responded that because of the static it was hard for him to hear. When appellant apologized for making Christina watch him jack off, he believed that she was referring to when she saw him and Rita having sex on the couch. Finally, when appellant asked Christina to forgive him, he claimed it was because he and Rita were not married and were kicked out of the church.

Appellant's sister testified regarding his "fatherlike" relationship with his nieces and nephews and his reputation for not molesting children. She also stated she never witnessed any inappropriate behavior between appellant and Christina while they lived with her or when she visited Rita's home and that there was no animosity between Christina and appellant. She also testified

that Rita had called on occasion upset about Martha. Appellant's cousin, whose house Rita and appellant lived at for a while, testified that she did see Christina in the presence of a dildo at one point.

## DISCUSSION

### *Ineffective Assistance of Counsel*

Appellant contends that his conviction must be reversed because he did not receive effective assistance of counsel. He argues his trial counsel failed to formally investigate Christina's credibility and/or competence as a witness by way of a "taint hearing."

### A. *Background*

During the majority of the pretrial proceedings appellant was represented by retained counsel Bill J. Weir. On October 27, 2004, Weir filed a notice of motion and a motion to conduct a taint hearing,[4] which the trial court calendared for November 12, 2004. Both the trial date and the date for hearing motions were continued numerous times and the trial did not occur until August 23, 2005. On three occasions during this period, Weir moved for, and the trial court granted, requests to appoint an investigator to aid appellant in the preparation of his case.

On April 1, 2005, Weir was relieved as appellant's attorney by the court and was replaced by Louisa Pensanti. Motions in limine were held on August 23, 2005. There is no evidence in the record showing that a formal taint hearing or specific discussions regarding Christina's competency as a witness occurred as part of these motions.

At trial, Pensanti cross-examined Christina, Rita, Pastor Murlless, and Detectives Wilson and Lomeli. Prior to Christina's testimony, the trial court asked a series of questions to determine Christina's age, whether she knew the difference between the truth and a lie, whether she understood she had to tell the truth in court, and if she promised to do so. After being satisfied with her responses, the trial judge permitted examination to begin.

### B. *Law*

An appellant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective

---

[4] Appellant concedes that the term "taint hearing" does not occur in Westlaw's databases, current California case law, California statutes or Witkin's California Criminal Law treatise. However, appellant suggests the motion might have more properly been titled "Motion in Limine to Determine Witness Credibility and Competence." For the sake of brevity, we will continue to utilize the term "taint hearing."

standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 104 S.Ct. 2052] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 218 [233 Cal.Rptr. 404, 729 P.2d 839] (*Ledesma*).) The same standard applies to retained and appointed counsel. (*Cuyler v. Sullivan* (1980) 446 U.S. 335, 344–345 [64 L.Ed.2d 333, 100 S.Ct. 1708].)

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694; see *Ledesma, supra,* 43 Cal.3d at pp. 217–218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* 466 U.S. at p. 694.) In demonstrating prejudice, the appellant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937 [245 Cal.Rptr. 336, 751 P.2d 395].)

In determining whether counsel's performance was deficient, we exercise deferential scrutiny. (*Strickland, supra,* 466 U.S. at p. 689; *Ledesma, supra,* 43 Cal.3d at p. 216.) The appellant must affirmatively show counsel's deficiency involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics. (*People v. Jackson* (1980) 28 Cal.3d 264, 289 [168 Cal.Rptr. 603, 618 P.2d 149], disapproved on other grounds in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3 [103 Cal.Rptr.2d 23, 15 P.3d 243].)

Our Supreme Court recently reiterated the obligations of appellate courts in reviewing claims of ineffective assistance of counsel: " ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of professional assistance.' " [Citation.] "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.]' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954 [47 Cal.Rptr.3d 420, 140 P.3d 736], citing *People v. Weaver* (2001) 26 Cal.4th 876, 925–926 [111 Cal.Rptr.2d 2, 29 P.3d 103].)

"Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent

counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances. (See generally, *People v. Eckstrom* (1974) 43 Cal.App.3d 996, 1002–1003 [118 Cal.Rptr. 391].)" (*People v. Freeman* (1994) 8 Cal.4th 450, 509 [34 Cal.Rptr.2d 558, 882 P.2d 249].)

Defendant's burden is difficult to carry on direct appeal. We reverse on the ground of inadequate assistance on appeal only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437 [48 Cal.Rptr.2d 525, 907 P.2d 373]; *People v. Osband* (1996) 13 Cal.4th 622, 700–701 [55 Cal.Rptr.2d 26, 919 P.2d 640].)

### C. *Appeal*

Appellant argues that Pensanti had a heightened duty to investigate the credibility of the only percipient witness to the events underlying the conviction. He claims Pensanti's duty was heightened because of Weir's filing of the "Motion to Conduct a Taint Hearing" and his contention that the court appointed an investigator to prepare for that hearing. Consequently, he contends Pensanti's failure to pursue a taint hearing denied him effective assistance of counsel because a potentially meritorious defense was to undermine Christina's credibility and/or competency to testify. Appellant therefore requests we: (1) remand to the trial court with instructions allowing expert examination of Christina and all persons who interviewed or counseled her in relation to the case; and (2) order a taint hearing to determine the competency and credibility of Christina's testimony.

#### 1. State v. Michaels

Preliminarily, we note appellant contends the trial court appointed the investigator to aid appellant for the specific purpose of preparing for the taint hearing. However, there is no specific evidence in the record to support this contention. In fact, in all three of the orders granting the requests, the trial court simply stated the investigator was appointed to "provide the defendant with investigative services in the preparation of his/her defense."

Relying on a New Jersey Supreme Court decision, appellant argues that a taint hearing is a valid pretrial procedure to investigate and determine witness competency and potential distortion of a child witness's memory. In *State v. Michaels* (1994) 136 N.J. 299 [642 A.2d 1372], a nursery school teacher was convicted of sexually abusing multiple children in her care. (*Id.*, 642 A.2d at p. 1374.) Significantly, extensive evidence presented in the case showed the

children were subjected to extensive, repeated, leading and potentially hostile interviews and interrogations. (*Id.* at pp. 1385–1391.) In light of this evidence, the court was concerned that the use of "highly suggestive interrogation techniques" could have distorted the children's recollection of the events. (*Id.* at p. 1379.) As a result, the court held a taint hearing was required under the state's evidence rules to determine "whether the pretrial events, the investigatory interviews and interrogations, were so suggestive that they give rise to a substantial likelihood of irreparably mistaken or false recollection of material facts bearing on defendant's guilt." (*Id.* at p. 1383.)

Regardless of the availability of the taint hearing procedure in New Jersey, the *Michaels* court still required the defendant to overcome a significant hurdle before this procedure was deemed appropriate. In *Michaels* the court noted child witnesses were deemed to be no more or less reliable than other witnesses; therefore, "[t]he defendant must make a showing of 'some evidence' that the victim's statements were the product of suggestive or coercive interview techniques" to trigger the taint hearing. (*State v. Michaels, supra,* 642 A.2d at p. 1383.) If the defendant can make this showing, the state must prove by clear and convincing evidence that the witness' statements are reliable. (*Ibid.*) In *Michaels* the court found sufficient grounds to trigger the taint hearing based on evidence of "the absence of spontaneous recall, interviewer bias, repeated leading questions, multiple interviews, incessant questioning, vilification of defendant, ongoing contact with peers and references to their statements, and the use of threats, bribes and cajoling, as well as the failure to videotape or otherwise document the initial interview[s]." (*Ibid.*)

### 2. *Competency and Credibility Determinations in California*

Appellant cites no authority and we can find none that approves or requires *Michaels*-style taint hearings in California. Like other states, we reject *Michaels* in favor of our well-established competency jurisprudence. (See, e.g., *Pendleton v. Com.* (Ky. 2002) 83 S.W.3d 522, 525–526, superseded by statute on other grounds as stated in *Jones v. Com.* (Ky.Ct.App. July 25, 2003) 2003 WL 21713776; *English v. State* (Wyo. 1999) 982 P.2d 139, 145–147; *Dependency of A.E.P.* (1998) 135 Wn.2d 208 [956 P.2d 297, 307] (en banc); *State v. Olah* (2001) 146 Ohio App.3d 586 [2001 Ohio 1641, 767 N.E.2d 755].)

The relevant determination in California is whether a minor victim is competent to testify.

As a general rule, "every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter." (Evid. Code,

§ 700.) A person is incompetent and disqualified to be a witness if he or she is "[i]ncapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him" (Evid. Code, § 701, subd. (a)(1)), or is "[i]ncapable of understanding the duty of a witness to tell the truth" (Evid. Code, § 701, subd. (a)(2)). (See *People v. Lewis* (2001) 26 Cal.4th 334, 360 [110 Cal.Rptr.2d 272, 28 P.3d 34].) A witness's competency to testify is determined exclusively by the judge. (*Ibid.*) Thus, the judge determines the preliminary facts of capacity of an ordinary witness to understand the oath and to communicate. This is exactly what the trial court did in this case with its questioning of Christina prior to allowing her to testify.

 To testify, a witness must have personal knowledge of the subject of the testimony, based on the capacity to perceive and recollect. (See *People v. Dennis* (1998) 17 Cal.4th 468, 525 [71 Cal.Rptr.2d 680, 950 P.2d 1035].) The capacity to perceive and recollect is a condition for the admissibility of a witness's testimony on a certain matter, rather than a prerequisite for the witness's competency. (*Ibid.*) " '[I]f there is evidence that the witness has those capacities, the determination whether [she] in fact perceived and does recollect is left to the trier of fact. [Citations.]' " (*Id.* at p. 526.) Thus, if Pensanti believed Christina had these capacities, and there is no evidence in the record to the contrary, it was not unreasonable for her to fail to object to the admission of Christina's testimony.

### 3. *Performance Was Reasonable*

In order to make an independent judgment as to whether there was a satisfactory tactical explanation for Pensanti's failure to pursue a formal taint hearing, we examine the record. (See *People v. Osband, supra*, 13 Cal.4th at pp. 700–701.) If the record contains an explanation for counsel's actions, the ineffective assistance claim will fail because we will defer to counsel's decision, and presume it falls within the wide range of reasonable tactical decisions available to defense counsel under similar circumstances. (See *People v. Weaver, supra*, 26 Cal.4th at p. 925.) However, if the record is void of an explanation by counsel for their actions, we examine the record to determine if an independent satisfactory explanation exists to show counsel's actions were a reasonable tactical decision. (*Ibid.*)

In examining the record, we find a satisfactory explanation does exist for Pensanti's tactical choice not to pursue a taint hearing.[5]

---

[5] Appellant has attached as exhibit H to his petition a declaration from Ernest LeRoy Hales, a paralegal for appellant's appellate counsel. The declaration states what Pensanti allegedly told him during a November 15, 2005, telephone call. During the call Hales allegedly asked Pensanti if a taint hearing had ever been conducted in appellant's case and her response was to

■ The record reflects Christina, who was not a very young child, was articulate concerning her relationship with appellant. No evidence existed that she was questioned and misled by professionals or that she was pressured by professionals to misstate or misperceive the truth about what occurred. In the absence of such evidence, if Pensanti could have reasonably believed that Christina would have been able to coherently communicate her testimony at trial, she would not have been able to disqualify her as a witness. In light of this fact, a reasonable option existed for Pensanti to attack Christina's testimony on cross-examination. Cross-examination was also available for Pensanti to attack the credibility of Rita, Pastor Murlless and Detective Wilson in regards to the reporting and investigation of appellant's sexual assaults on Christina.

We find that attempting to attack Christina's competency as a witness in order to disqualify her as a witness was an unlikely outcome, and as a result, attacking Christina's and the other witnesses' credibility during cross-examination was a legitimate defense strategy. That is exactly what Pensanti attempted to do. The fact that the jury found the prosecution's witnesses believable is not a determination that can be blamed on Pensanti.

In light of the fact there was no evidence of procedures which would trigger the need for a taint hearing and in any event processes existed to challenge Christina by way of cross-examination, we find counsel's conduct was not unreasonable conduct under prevailing professional norms. (*Strickland, supra*, 466 U.S. at p. 688.)

### 4. *Prejudice*

Even assuming Pensanti's performance was unreasonable for failure to pursue a taint hearing, appellant cannot show he was prejudiced. To do so, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra*, 466 U.S. at p. 694.) However, prejudice must be established as " 'a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel.' " (*In re Clark* (1993) 5 Cal.4th 750, 766 [21 Cal.Rptr.2d 509, 855 P.2d 729].)

Appellant was permitted to fully cross-examine Christina, Rita, Pastor Murlless and Detective Wilson and to ask them whatever questions he desired

---

the effect and/or exactly, "I have no idea." We have two difficulties with Hales's declaration: first, the response "I have no idea" does not amount to an explanation of Pensanti's performance with respect to the taint hearing; and second, Pensanti's statement to Hales is hearsay for which there does not appear to be any exception. Unless the issue has been conceded by the respondent, habeas corpus relief cannot be granted on the basis of inadmissible hearsay. (See *In re Fields* (1990) 51 Cal.3d 1063, 1070 [275 Cal.Rptr. 384, 800 P.2d 862].)

to try to elicit any evidence of alleged taint. However, cross-examination did not produce any evidence of overly suggestive or coercive interviewing of Christina. There is no evidence to suggest that investigation for or conducting of a taint hearing would have produced anything different than what was brought out during cross-examination and would likely be a duplicative procedure.

Additionally, appellant was faced with the daunting task of not only overcoming the crippling testimony by Christina, but also the highly incriminating statements that he made during the pretext phone call. There is no dispute as to the admissibility of the pretext phone call and the strength of the call as evidence corroborating Christina's testimony is indisputable.

Based on the totality of the evidence, it is highly unlikely a different result would have occurred had Pensanti conducted interviews with each of the officers, detectives, and counselors who interviewed or treated Christina and subsequently pursued a taint hearing. Our confidence in the verdict is not undermined by Pensanti's alleged deficient performance in not further investigating the witness interviews or further pursuing a taint hearing. Therefore, appellant has failed to show that Pensanti's performance was prejudicial.

D. *Petition*

 The petition for writ of habeas corpus does not assist appellant. If the trial record does not show the reasons for counsel's tactical decisions and the petitioner does not supplement the record with declarations or other evidence showing those reasons, and unless there could be no conceivable reason for counsel's acts or omissions, the claim must fail. (See *People v. Weaver, supra,* 26 Cal.4th at p. 925.)

In his petition, appellant restates the argument in his opening brief, alleging that he was denied effective assistance of counsel. Appellant notes in his reply brief that his motivation for filing the petition was to present to the court exhibits which are outside the record.

Appellant's attachment of various scientific and nonlegal publications about the testimony of child victims does not lend sufficient support to his argument, in light of the record being void of any evidence that any improper or coercive interviews or investigations took place in this case. Moreover, the publications lend no additional support to appellant's claim that Pensanti's performance was ineffective in light of the fact that California does not require *Michaels*-style taint hearings. Finally, we note there is no statement of counsel which sheds any precise light on how or why counsel did not pursue the taint hearing motion brought, then apparently abandoned. For these reasons, we deny the petition.

## DISPOSITION

The judgment is affirmed and the petition is denied.

Huffman, J., and Irion, J., concurred.