Filed 10/4/13  P. v. Perez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055937 |
| v. | (Super.Ct.No. FVI802609) |
| FERNANDO ERNEST PEREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed with directions.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION[1]

Defendant Fernando Ernest Perez participated in a home invasion robbery in which a fellow gang member was shot and killed by one of the house's residents. A jury convicted defendant of attempted home invasion robbery (§§ 664/211; 213, subd. (a)(1)(A)); home invasion robbery (§§ 211; 213, subd. (a)(1)(A)); burglary (§ 459); two counts of assault with a firearm (§ 245, subd. (a)(2)); and street terrorism (§ 186.22, subd. (a).) The jury also found true that a principal used a firearm, that a principal was armed with a firearm, and that the acts were committed at the direction of or for the benefit of a criminal street gang. (§§ 186.22, subd. (b)(l); 12022, subd. (a)(1); 12022.53, subds. (b) & (e)(1).) The jury acquitted defendant of murder (§ 187) and found the personal gun use untrue. (§ 12022.5, subd. (a).) In a bifurcated proceeding, the court found true the prison prior. (§ 667.5, subd. (b).)

The court sentenced defendant to a total term of 50 years to life in state prison. On appeal, defendant raised two issues: *Miranda*[2] error and sentencing error. The People concede the abstract of judgment must be corrected to reflect the pronouncement of judgment. Subject to that modification, we affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

II

STATEMENT OF FACTS

The facts in this case are not disputed. The only issues are whether defendant appropriately received *Miranda* admonitions.

A. *The Home Invasion*

We describe briefly the events which occurred on November 30, 2008. After a meeting of the East Side Victoria (ESV) criminal street gang, defendant, known as "Bams," and two other gang members—Joseph DeLonnie, "Goofy", and Jorge Espinoza, "Sleepy"—undertook a mission to recover drugs and money from David Boutieller, a Victorville drug dealer. The ESV gang charged Boutieller a "tax" of about a hundred dollars a week in exchange for allowing him to sell methamphetamine. Defendant obtained a gun for Goofy to use to "scare" Boutieller.

Boutieller had barricaded the front door of his residence with a large-screen television and a piece of wood. When the three gang members arrived, defendant kicked open the blocked entrance. Boutieller realized someone was breaking into the house so he grabbed his gun and locked his bedroom door. He heard someone scream, "Where's David?"

Defendant kicked in the bedroom door and circled through the bedroom, bathroom, laundry room, and kitchen, searching for Boutieller. Boutieller tried to hide in the bathroom. Boutieller stepped into the bathtub and tried to stow his gun behind a dresser near the bathroom door. Defendant entered the bathroom and asked for the gun. Boutieller refused. Defendant grabbed Boutieller by his arm and wrestled with him.

3

Boutieller put the gun under his arm, pulled the trigger, and shot defendant, who fell into the bathtub.

Boutieller left the bathroom and went into the living room. Goofy did not appear to have heard the gunshot and was guarding two other occupants of the house, Boutieller's sister and aunt. Boutieller shot Goofy twice and Goofy dropped a rifle and ran out of the house. Goofy died in the front yard from gunshot wounds.

Because Boutieller was worried about liability for shooting defendant and Goofy, he flushed the empty shell casings down the toilet, and locked the gun in his shed. Officers found a rifle on the kitchen floor.

*B. Gang Evidence*

Deputy Josh Conley testified as a gang expert that he was part of a multi-agency gang sweep in 2008. According to Conley, the ESV is a predominately Hispanic street gang that originated in the City of Victorville, and has about 200 documented members and associates. The gang is known for weapons possession and drug sales, and is an umbrella affiliate of the larger Mexican Mafia prison gang. Conley confirmed that Boutieller was paying taxes to the ESV gang.

Defendant admitted being an ESV member to officers on several occasions in 2007 and 2008. Defendant told Conley he was an ESV member. Defendant had not tried to disassociate himself from the gang as of November 2008. When he was arrested, defendant had numerous gang-related tattoos. Defendant also had two tattoos of the number 13, showing allegiance to the Mexican Mafia.

4

## C. Defendant's Statements

Defendant was interviewed twice by deputy sheriffs. Defendant told the officers that he, Goofy, and Sleepy entered Boutieller's home to recover the taxes Boutieller owed ESV. Defendant admitted kicking down Boutieller's front door. Defendant also admitted he had tried to grab Boutieller's gun when Boutieller shot him. Other aspects of defendant's statements to the officers will be discussed below.

## III

## DEFENDANT'S MOTION TO SUPPRESS

## DECEMBER 8, 2008, AND DECEMBER 15, 2008, STATEMENTS

Defendant claims his statement—which was made on December 8, 2008, while he was being treated in the hospital for his gunshot wounds—was improperly admitted because it was obtained by means of a coercive custodial interrogation without the officers reading him his *Miranda* rights. Defendant also asserts his statement from December 15, 2008,—obtained after he was arrested and advised of and waived his *Miranda* rights—was improperly admitted because it was obtained as part of an unlawful two-step interrogation. Defendant's first argument fails because defendant was not in custody on December 8, 2008. Furthermore, by not raising a claim below, he forfeited his challenge to the December 15, 2008, statement, and also cannot demonstrate that counsel acted ineffectively by not objecting to admission at trial. Finally, any error was harmless.

5

*A. Proceedings Below*

Before trial, defense counsel moved to suppress defendant's December 8, 2008, statements for violating *Miranda.* Defense counsel did not object to the December 15, 2008, statement because defendant appeared to be "*Mirandized.*" At a hearing on the suppression motion, Sergeant Casey Jiles testified that he interviewed defendant at the hospital with a sheriff's detective. Defendant was in the regular hospital, not the jail ward. Defendant did not appear to be under the influence of any medication affecting his participation in the interview. He was coherent and responsive to the questions. Defendant was not under arrest and he was not handcuffed. The officers were not in uniform although they had badges. Sergeant Jiles considered him to be a witness rather than a suspect. The interview lasted about an hour. Defendant did not request a lawyer or ask to stop speaking to the officers. When defendant mentioned consulting a lawyer, Sergeant Jiles explained defendant was not under arrest and the officers only wanted to ascertain what defendant knew about what had occurred. Jiles also told defendant the district attorney would decide whether charges would be filed, and that it "could happen." Defendant did not ask about a lawyer again.

At the conclusion of Sergeant Jiles's testimony, the prosecution argued that defendant was not in custody on December 8, 2008, when he was recovering from his wounds, and there was no indication that his statements were not free or voluntary. In response, defense counsel asserted that in order to determine whether a suspect is in custody for *Miranda* purposes, the court must consider whether he has been formally arrested, the length of his detention, the ratio of officers to suspects, and the nature of the

6

questioning. Defense counsel contended defendant was being questioned as a suspect although the interview was not in a custodial setting. The court responded, "[i]n this case we know [defendant] was not free to leave, but his lack of freedom to leave had nothing to do with police officers. I think that it fails on the issue of custody. [¶] It doesn't sound like he did anything to invoke his rights." Moreover, the officers' concern "about the veracity of the defendant does not mean that they thought that he was going to be a defendant. People can be dishonest for a lot of reasons, not the least of which is just wanting to disassociate themselves with people that are involved that might be defendants." The court ruled that "[o]n balance . . . I don't think there's any reason to suppress the statements. They sound like they were made freely and voluntarily in a noncustodial setting." The court admitted the December 8, 2008, statements.

The jury listened to the recorded December 8, 2008, interview. At the beginning, Sergeant Jiles asked defendant if he was able to talk and defendant agreed. After discussing defendant's injuries, Sergeant Jiles explained, ". . . I'd like to find out what happened and get your side of it. I mean, you're not under arrest." Defendant then told the two officers "We were over there at that house. [¶] . . . [¶] [a]nd I um guess he thought we were trying to rob him." Defendant admitted he was with Goofy and Sleepy, and they were "gonna do uh some kinda drug deal or something." Defendant answered Jiles's questions about what had happened in the house and how defendant was shot.

When defendant asked if he could get in trouble for telling the officers "everything" and questioned whether he should "talk to a lawyer first," Sergeant Jiles repeated defendant was not under arrest but he could speak to a lawyer if he wished. Jiles

7

explained, "[I]t's important that, that you tell me, truthfully, what happened that night, because a lot of things that appear to be one way may be pointed negative towards you. Might get cleared up based on what you tell me." Defendant said he went with Goofy and Sleepy to Boutieller's residence intending to take whatever drugs or money they could find. Defendant said that the ESV gang had threatened him. Defendant called it the "[s]tupidest thing I've ever done in my life." Defendant was inconsistent about many of the details. The officers encouraged him to be honest. During the interview, a nurse and a dietitian entered the room. Defendant's mother also entered briefly. The officers ended the interview and did not arrest defendant.

The officers filed an affidavit in support of a warrant for defendant's arrest on December 9, 2008. When defendant was interviewed on December 15, 2008, he had been arrested and moved into the hospital's jail ward. Sergeant Jiles read defendant his *Miranda* rights and defendant waived them. Defendant reiterated his previous statements adding details about the break-in and his involvement. Defendant told the officers, "I'ma gonna tell you everything straight, because I don't want this to happen to nobody else." He recognized the risk of gang retaliation but explained, "I'd rather help you guys." He expressed remorse: ". . . I'm ashamed . . . Someone, a kid, lost their life. I got shot and almost died. Almost lost my life for dope."

*B. Standard of Review*

Based on the Fifth Amendment right against self-incrimination, a suspect may not be subjected to police interrogation while in custody unless he has previously been advised of and knowingly and intelligently waived his rights to remain silent, to the

8

presence of an attorney, and to appointed counsel if indigent. Statements made in violation of *Miranda* are inadmissible to establish guilt. (*People v. Esqueda* (1993) 17 Cal.App.4th 1450, 1480-1481.)

The reviewing court examines the uncontroverted evidence independently to determine whether the challenged statement was unlawfully obtained. (See *People v. Gamache* (2010) 48 Cal.4th 347, 385.) The appellate court accepts the trial court's resolution of disputed facts and inferences, as well as its evaluations of credibility, provided they are supported by substantial evidence. (*Ibid.*)

*C. Defendant's December 8, 2008, Statements*

Officers must read a suspect his *Miranda* rights when he is subject to a custodial interrogation, which occurs when he is taken into custody or otherwise deprived of his freedom of action in any significant way. (*Miranda v. Arizona, supra,* 384 U.S. 436.) Where there is no formal arrest, the court must determine "how a reasonable man in the suspect's position would have understood his situation." (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442.) In making this determination, the court considers the length of the suspect's detention, the location of the detention, the ratio of officers to suspects, and the nature of the questioning. (See, e.g., *People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403.) Additionally, the court should consider whether the suspect agreed to the interview and was aware he could terminate the questioning, whether he was told he was considered a witness or suspect, whether there were restrictions on his freedom of movement during the interview, whether officers dominated and controlled the

interrogation, whether officers pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. (*Ibid*.)

Defendant contends that he was in custody for purposes of *Miranda* on December 8, 2008, because he was "constructively deprived" of his freedom when he was confined to a hospital bed. He also asserts the questioning was aggressive, confrontational, and accusatory. As the trial court observed, however, the restriction on defendant's freedom of movement was not caused by the officers but because defendant was hospitalized for his injuries. Except for being questioned by the officers, there was nothing to suggest defendant was in custody or its functional equivalent. Defendant also spoke freely—even eagerly—with the officers. Because defendant was not in custody, the officers were not required to advise him of his *Miranda* rights.

Medical care facilities are not inherently custodial settings. In *People v. Mosley* (1999) 73 Cal.App.4th 1081, the officer interviewed the defendant in an ambulance after the defendant had been shot in the arm and was being treated by paramedics. The officer sought to find out what happened at the scene of the shooting, and he did not know whether the defendant was a victim. (*Id.* at p. 1089.) The *Mosley* court noted that any restraint on defendant's freedom of action was caused by treatment of his gunshot wound which was still bleeding. (*Id.* at p. 1091.) The defendant had not been arrested and was not in handcuffs. The interview was conducted in the presence of medical personnel, and the questioning was not accusatory or threatening. (*Ibid*.) The court held that, based on the totality of circumstances, a reasonable person in the defendant's position would not have considered himself in custody, and no *Miranda* warnings were required. (*Ibid.*;

10

*United States v. Martin* (9th Cir. 1986) 781 F.2d 671; *Wilson v. Coon* (8th Cir. 1987) 808 F.2d 688.)

In the present case, hospital staff entered defendant's room to check his equipment and ask about his diet. When defendant's mother entered the room, the officers politely asked to continue speaking with defendant for "a few minutes." The officers did not restrict defendant's freedom of movement. They did not arrest defendant and they reminded him they were only speaking to him as a witness. The affidavit in support of a warrant for defendant's arrest was not filed until the following day.

The record does not support defendant's contention that the nature of the questioning on December 8, 2008, was aggressive and confrontational. The questions were largely open-ended. Defendant did not try to end the interview or object to the nature of the questioning. After responding to various questions about the shooting, defendant asked if he was going to get into trouble. Sergeant Jiles candidly told defendant the district attorney's office would determine whether charges would be filed. Sergeant Jiles reiterated that defendant was not under arrest and he could speak with an attorney if he felt he needed to but he was still only a witness. Defendant's second interview a week later confirmed that he spoke with officers of his own accord and not because he felt threatened or intimidated. Defendant understood the risks he faced but he said, "I'd rather help you guys."

The record does not support defendant's characterization that the officers implied defendant might avoid arrest if he cooperated. Instead, the officers told defendant that they hoped to discover what happened the evening of the shooting and they suggested

11

defendant should tell the truth because he might be able to show he did not play an active role in the crime. The officers did not mislead defendant by promising he could avoid facing criminal charges. A reasonable person in defendant's position would not have believed he was in custody. The trial court therefore properly admitted appellant's December 8, 2008, statements.

## D. Defendant's December 15, 2008, Statements

The trial court also properly admitted defendant's December 15, 2008, statements. Defense counsel offered no objection to the second interview, thus forfeiting any challenge on appeal. (Evid. Code, § 353, subd. (a); *People v. Mattson* (1990) 50 Cal.3d 826, 854, quoting *People v. Milner* (1988) 45 Cal.3d 227, 236.) Recognizing the forfeiture, defendant asserts defense counsel was ineffective in failing to challenge the December 15, 2008, statements on the basis that his *Miranda* waiver was invalid under *Missouri v. Seibert* (2004) 542 U.S. 600, and his statements were obtained by means of an impermissible two-step interrogation.

In order to establish ineffective assistance of counsel, the defendant must demonstrate that his counsel performed deficiently causing prejudice and depriving him of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) In order to demonstrate sufficient prejudice to overturn a conviction, the defendant "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147, quoting *Strickland,* at p. 694.) Defendant cannot establish either prong.

12

In *Seibert,* the investigating officer "testified that he made a 'conscious decision' to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question 'until I get the answer she's already provided once.'" (*Missouri v. Seibert, supra*, 542 U.S. at pp. 605-606.) Defendant declares that the questioning on December 15, 2008, was "precisely the type of questioning technique declared unconstitutional by the Court in *Siebert*." We disagree. A court applying *Seibert* must exclude statements obtained where officers "*deliberately* employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a *reasonable person* in the suspect's shoes of his rights . . . ." (*People v. Rios* (2009) 179 Cal.App.4th 491, 505, quoting *United States v. Williams* (9th Cir. 2006) 435 F.3d 1148, 1157-1158.) Even where a two-step interrogation tactic is implemented, a substantial break in time and circumstances between the pre-warning statement and the *Mirandized* statement may remedy the harm, as the accused may "distinguish the two contexts and appreciate that the interrogation has taken a new turn." (*People v. Camino* (2010) 188 Cal.App.4th 1359, 1369-1370, citing *Missouri v. Seibert, supra*, 542 U.S. at p. 622.)

As already discussed, defendant's December 8, 2008, statements were not procured in violation of *Miranda* because defendant was not in custody at the time the statements were made. Therefore, defendant's statements on December 8, 2008, and December 15, 2008, were both admissible and *Seibert* does not apply. Furthermore, there is no indication that the officers conducted the December 15, 2008, interview as part of a

deliberate two-step interrogation.  Sergeant Jiles testified that he did not advise appellant of his *Miranda* rights on December 8, 2008, because "[h]e was not in custody," and because he considered defendant a witness not a suspect.  Sergeant Jiles read defendant his *Miranda* rights on December 15, 2008, because the district attorney's office had filed charges and Jiles considered defendant in custody.  Defendant was read his *Miranda* rights before the second interview because he was under arrest and in custody.

The facts of defendant's case differ significantly from the police misconduct in *Seibert*.  The December 8, 2008, interview was conducted without any coercion.  Defendant was not in custody or treated as if he were.  Additionally, there was a substantial break in time and circumstances between the December 8, 2008, and December 15, 2008, interviews, rather than 20 minutes in *Seibert*.  At the time of the second interview, defendant had been charged and moved into the jail ward, and he was "in custody."  Under *Miranda*, the officers were then required to read defendant his rights at the second interview.

We also reject defendant's assertion that his December 15, 2008, statements were improperly "derived" from his un-*Mirandized* December 8, 2008, statements.  In *Oregon v. Elstad* (1985) 470 U.S. 298, 309, the United States Supreme Court rejected the idea that a subsequent confession must necessarily be excluded because it follows an otherwise voluntary statement given without *Miranda* warnings:  "It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a

14

subsequent voluntary and informed waiver is ineffective for some indeterminate period." During the December 15, 2008, interview, defendant told officers he wanted to help them by providing information—hardly a statement he would not have made if he had been unlawfully compelled to confess only a week earlier.

*E. Harmless Error*

Any error admitting defendant's statements was harmless beyond a reasonable doubt. (*People v. Thomas* (2011) 51 Cal.4th 449, 498.) Even without defendant's admissions, the undisputed evidence of his participation in the crime was extensive. Boutieller and several other witnesses testified in consistent detail about defendant's actions, including that the ESV gang sought to "tax" Boutieller by robbing him and burglarizing his house, as also corroborated by the testimony of Deputy Conley, the gang expert. Defendant's motive was thus independently established by the testimony of Boutieller and Conley.

IV

CORRECTION OF THE ABSTRACT OF JUDGMENT

The People concede the abstract of the judgment should be corrected to reflect the sentence on count 6 was stayed by the court pursuant to section 654. Defendant was convicted in count 6 of assaulting Boutieller's sister with a firearm. For that count, the court sentenced defendant to one-third the midterm sentence for a total sentence of one year. It doubled the sentence pursuant to defendant's strike "for a total amount of two years consecutive to additional time [defendant was] serving." It then increased the sentence to five years because of defendant's gang enhancement, and stayed the sentence

15

pursuant to section 654.  Because the abstract of judgment erroneously provided for a concurrent sentence, it should be corrected to reflect the fact the sentence was stayed under section 654.

V

DISPOSITION

We order the superior court to correct the abstract of judgment to show the sentence on count 6 was stayed under section 654, not imposed concurrently, and to provide a copy of the amended abstract to the parties and to the Department of Corrections and Rehabilitation within 30 days after this opinion becomes final.

Subject to that modification, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


KING
J.

16