Filed 2/5/16  P. v. Paghani CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067158 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD251996) |
| HAMID PAGHMANI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon B. Majors-Lewis, Judge.  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Hamid Paghmani of making a criminal threat. (Pen. Code, § 422.)[1] In a posttrial proceeding, Paghmani admitted he had served two prior prison terms and had a prior strike conviction. (§§ 667.5, 667, subds. (b)-(i), 1170.12.) The trial court sentenced Paghmani to six years in state prison.

Paghmani contends he was denied effective assistance of counsel because his attorney did not request the mental impairment instruction, which would have allowed the jury to consider evidence of his mental health condition for the limited purpose of deciding whether he acted with the intent or mental state required for that crime. (CALCRIM No. 3428.) Paghmani argues he was prejudiced by counsel's failure to request the mental impairment instruction because the jury would have questioned his ability to form the specific intent necessary to make an unconditional threat.

The record shows that counsel made a tactical decision in not raising his client's mental health condition as a defense to the specific intent element of the offense. The record does not affirmatively disclose there is no rational tactical purpose for counsel's omission. We conclude Paghmani was not denied effective assistance of counsel, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Paghmani was released from prison in September 2013 after serving a sentence for stalking. Because his crime was statutorily classified as nonserious, nonsexual and nonviolent, he was placed on postrelease community supervision (PRCS) pursuant to the

---

1  Unless otherwise specified, further statutory references are to the Penal Code.

2

Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1.)  In preparing for release, Paghmani went through the normal screening process and was referred for mental health treatment.  His mental health condition was diagnosed as paranoid schizophrenia.

On September 18, 2013, Paghmani met with Audrey Comagon, a San Diego County Deputy Probation Officer.[2]  Comagon explained the conditions of PRCS to Paghmani, including his required compliance with mental health services.  During the meeting, Paghmani became upset and his aggression level increased.  He was handcuffed by other probation officers.  His brother, who was in another room, heard the yelling, and offered his assistance; he was able to calm Paghmani.

Several weeks later, Paghmani met with Comagon for a routine visit.  He left without providing a urine sample, violating the terms of his community supervision.  On October 1, Comagon and other officers went to Paghmani's home to conduct a PRCS search.  Paghmani sat and laughed, refusing at first to answer any questions.  Officers did not locate any weapons or contraband during the search.

Paghmani's family told Comagon at least eight times that his mental health condition appeared to be deteriorating.  He was not eating and he was pacing and talking to himself.  They tried to obtain treatment for him at a hospital on October 2.

---

[2]     "Although monitored by county probation officers, a defendant on PRCS is not on probation and PRCS is similar to parole." (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1266.)

On October 11, Paghmani met with Comagon in her office. He asked her for an out-of-state pass to visit his sister for Thanksgiving. During their meeting, Paghmani was laughing inappropriately. He was speaking in a language that Comagon did not understand. Comagon denied Paghmani's request for an out-of-state pass because he had just been released from prison and was not in compliance with his PRCS conditions.

On October 24, Paghmani left two voice-mail messages on Comagon's direct line. In his first message, he identified himself and asked for a bus pass, and to visit his sister in Utah on Thanksgiving. He asked Comagon to ask the courts if he could get a pass to go to Utah. He said, "Thank you. Thank you and good-bye."

Approximately two hours later, Paghmani left a second message, saying: "Look bitch ass Comagon. It's Hamid Paghmani AM4396. This is what you need to do. Get me the fuck out of San Diego before I blow your fuckin' brains out bitch."

Comagon listened to her voice-mail messages the following morning. When she heard Paghmani's second message, she believed that he wanted to kill her for denying his request for an out-of-state pass. She was familiar with his criminal history, which included stalking a former girlfriend and making violent threats against the girlfriend and her father, and beating and robbing a woman at a bus stop. Comagon had read reports stating Paghmani had threatened and acted aggressively toward his mother and father. Comagon also knew Paghmani's mental health condition was diagnosed as paranoid schizophrenia and his behavior was erratic. This contributed to her fear he would carry out his threat. Believing her life was at risk, she immediately sent a team of officers to arrest Paghmani. He was arrested without incident.

4

Paghmani's first trial on the charge of making a criminal threat (§ 422) resulted in a hung jury and mistrial. At a trial conference for the second trial, the trial court[3] told the attorneys the prosecution was required to prove Paghmani intended his statement to be understood as a threat,[4] and asked whether defense counsel (Counsel) was presenting "a mental illness issues defense." The trial court discussed allowing the jury to consider defendant's mental illness for the limited purpose of deciding whether, at the time of the act, the defendant had the specific intent to communicate that threat to the victim and intended his statement to be understood as a threat. The court asked, "Couldn't you give him a . . . mental illness issues defense?"

Counsel said he was presenting the same defense he had presented at the first trial—that Comagon's fear was unreasonable because she knew about Paghmani's mental health status and was familiar with his mood swings. The trial court said the theory did not appear to be helpful to the defense because it allowed Comagon to conclude that Paghmani's erratic behavior made him more dangerous. Counsel said he understood "the flip side" of the argument but he intended to argue that Comagon's fear was not

---

[3]    The second trial was heard by a different judge.

[4]    This discussion concerned the elements required to prove the offense of making a criminal threat under section 422: (1) the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to another person; (2) the defendant made the threat orally or by electronic communication device; (3) the defendant intended that his statement be understood as a threat and intended that it be communicated to that person; (4) the threat was so clear, immediate, unconditional, and specific that it communicated to that person a serious intention and the immediate prospect that the threat would be carried out; (5) the threat actually caused that person to be in sustained fear for her own safety; and (6) that person's fear was reasonable under the circumstances.

5

reasonable in view of what she knew about Paghmani. Counsel argued Comagon should be permitted to testify that she reviewed Paghmani's file and was aware he had been referred to mental health services for treatment of paranoid schizophrenia.

The trial court said Counsel was entitled to present the defense that Comagon's fear was not reasonable under the circumstances. The trial court realized the defendant was objecting to the admission of psychiatric evidence through Comagon's testimony. Further, describing the nuances of how paranoid schizophrenia affects a person was beyond the scope of Comagon, who was the sole witness. The trial court ruled Counsel could bring in limited evidence that Comagon knew Paghmani's mental health condition was diagnosed as paranoid schizophrenia, he suffered from mood swings and had been referred to mental health services.

Comagon was the only witness at trial. She testified about the events, as described above, and explained why the threat, considering Paghmani's history of aggressive and erratic behaviors, made her fear for her life. The jury returned a verdict of guilty.

DISCUSSION

Paghmani contends he did not receive effective assistance of counsel because Counsel did not request the mental impairment instruction. He asserts there was no tactical reason for the omission and he did not receive a fair trial because the jury was not properly instructed on how to receive evidence of his mental impairment. He maintains the error was prejudicial because, had the jury been properly instructed, it could have concluded that he did not intend the statement to be understood as a threat, and the result of the proceeding would have been different.

6

The Sixth Amendment of the United States Constitution and article I, section 15, of the California Constitution guarantee a criminal defendant a right to the assistance of counsel. This right includes the right to effective assistance of counsel. (*Powell v. Alabama* (1932) 287 U.S. 45, 68; *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. (*Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*).)

To establish ineffective assistance of counsel, a defendant must show counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that counsel's deficient performance was prejudicial. (*Strickland*, *supra*, 466 U.S. at pp. 687-688; *Ledesma*, *supra*, 43 Cal.3d at p. 216.) To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland,* at p. 694; *Ledesma*, at pp. 217-218.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland*, at p. 694.)

In determining whether counsel's performance was deficient, we exercise deferential scrutiny. (*Strickland, supra,* 466 U.S. at p. 689; *Ledesma*, *supra*, 43 Cal.3d at p. 216.) There is a strong presumption counsel's conduct falls within the wide range of professional assistance. (*People v. Stanley* (2006) 39 Cal.4th 913, 954.) Tactical errors are generally not considered reversible, and counsel's decisions are evaluated in the context of the facts. (*Ibid.*) Generally, we will reverse on the ground of inadequate

assistance only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission.  (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1148.)

In discussing a mental impairment defense with the trial court and the prosecutor, Counsel did not affirmatively state his reasons for not wanting to present that defense. The record shows Counsel did not intend to present any lay or expert testimony about Paghmani's lack of ability, as a result of his mental health condition, to intend his statement to be understood as a threat.  After discussing the issue, the trial court said it understood the defendant objected to Comagon testifying about his psychiatric records. Counsel obtained a ruling that Comagon could testify she knew Paghmani's mental health condition was diagnosed as paranoid schizophrenia, but not about any details of that condition.

" 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)  Here, had the defense introduced evidence about Paghmani's mental health condition, the prosecution would have been entitled to cross-examine the witness regarding details of his mental health condition. (See Evid. Code, § 721, subd. (a).)  In view of Paghmani's history of aggression and deteriorating mental health condition, the record permits the reasonable inference that Counsel made an informed, tactical decision to not raise a mental impairment defense and to rely on the position that Comagon's fear of harm was unreasonable.

The record does not affirmatively disclose there is no rational tactical purpose for Counsel's omission. (*People v. Montoya*, *supra*, 149 Cal.App.4th at p. 1148.) We conclude Paghmani received effective assistance of counsel.

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.