Filed 6/30/14  P. v. Mota CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARCELINO MOTA,<br><br>Defendant and Appellant. | A139542<br><br>(Sonoma County<br>Super. Ct. No. SCR-624849) |

Pursuant to a plea bargain, defendant Marcelino Mota pleaded guilty to a charge of willful infliction of corporal injury on his spouse resulting in a traumatic condition. Defendant is an undocumented immigrant facing deportation and as a result of his conviction is ineligible to apply for discretionary immigration relief.  After sentencing, defendant moved unsuccessfully to vacate the judgment and withdraw his plea, asserting his trial counsel was ineffective in failing to research, advise him of, and negotiate for an alternative plea with no immigration consequences.  Defendant contends the trial court abused its discretion in denying the motion.  We find no abuse of discretion and affirm the judgment.

## I.  BACKGROUND

Defendant was charged in a felony complaint, filed October 3, 2012, with willful infliction of corporal injury on his spouse resulting in a traumatic condition.  (Pen. Code, § 273.5, subd. (a).)[1]

_____

[1] All statutory references are to the Penal Code.

On August 18, 2012, the victim, defendant's wife, arrived home and found the door locked.[2] When defendant opened the door, he began yelling and cursing and eventually grabbed a wood broom. After removing the detachable bristles, defendant swung the four-foot-long broomstick at the victim multiple times. The victim used her arms to protect her face and was struck once on her left forearm and several times on her right wrist. The victim ran upstairs and told defendant she was going to call the police and he would be deported, to which defendant responded: " 'I don't care; I want to go back to Mexico.' " Defendant said nothing else to the victim, did not follow her upstairs, and instead left the home. The victim suffered contusions to both forearms and a small fracture in her right wrist.

On November 13, 2012, pursuant to a plea agreement, defendant pleaded guilty to willful infliction of corporal injury under section 273.5. The court granted defendant three years of formal probation and credit for time served. In 2013, defendant, an undocumented immigrant, was served with a notice to appear in immigration court and was found to be removable by the immigration judge. Although defendant is married to a United States citizen, as a result of his section 273.5 conviction, he was ineligible to apply for cancellation of removal—a form of discretionary immigration relief available to aliens with a United States citizen spouse.[3]

On April 15, 2013, defendant filed a motion to vacate the judgment and sought to withdraw his plea on the basis of ineffective assistance of counsel prior to and during his

---

[2] All facts relating to the crime are taken from the police report dated August 20, 2012.

[3] An alien who is deportable from the United States may be eligible to have their removal cancelled under section 240A(b) of Immigration and Nationality Act (8 U.S.C. § 1101 et seq.) if the alien (1) has been continuously present in the United States for 10 years prior to application; (2) has been a person of good moral character; (3) has not been convicted of certain specific crimes, including crimes of domestic violence; and (4) establishes that removal will result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a United States citizen or lawful alien. (8 U.S.C. § 1229b(b)(1).) A conviction under Penal Code section 273.5 bars cancellation of removal. (*Gonzalez-Gonzalez v. Ashcroft* (2004) 390 F.3d 649, 652.)

plea. The trial court held an evidentiary hearing on this matter. At the hearing, defendant's immigration attorney, Christopher Todd, and his trial counsel, Kristine Burk, testified.

Todd testified he frequently consults with defense attorneys and if consulted in this case he would have suggested a plea to dissuasion of a victim under section 136.1, subdivision (b), which has no immigration consequences. On cross-examination, however, Todd admitted he did not know of any facts in the police report that had to do with dissuasion of a witness.

Burk, defendant's trial counsel, testified she discussed the police report with defendant, discussed his priorities, and ascertained his immigration status. While Burk sometimes consults outside counsel regarding immigration consequences, she did not do so in this case because she was comfortable with her understanding of the immigration consequences and the alternative options. She had been doing criminal defense work since 1995 and felt comfortable with her understanding of immigration issues. In preparation for the plea in this case, Burk researched the specific immigration consequences of pleading to willful infliction of corporal injury under section 273.5.

Burk considered alternative plea options with no immigration consequences. She specifically contemplated a plea to dissuasion of a witness (§ 136.1), but believed such a plea would not work because it did not fit the facts or match the gravity of defendant's offense. In Burk's judgment, dissuasion mainly involved verbal conduct and was not consistent with the substantial physical injury inflicted on the victim in this case. She attempted to negotiate a plea to a lesser charge such as false imprisonment under section 236, which also has no negative immigration consequences, but false imprisonment also did not fit the facts and did not encompass the gravity of what had occurred. The district attorney spurned any lesser charge, pointing out the facts would have supported the addition of a great bodily injury enhancement. Burk recognized the addition of a great bodily injury enhancement allegation if the case went to trial would have made the violation a strike offense and rendered defendant ineligible for probation. She was also concerned he could have been charged with battery inflicting serious bodily

injury (§ 243, subd. (d)) or assault with a deadly weapon (§ 245). She felt she did not have much leverage to negotiate a different plea in light of these risks.

Burk testified that, in her experience, prosecutors in Sonoma County generally do not consider and are not concerned with a person's immigration status during plea negotiations. She explained they did not want to give a better deal to someone who is undocumented than they would to someone who is a citizen, on that basis alone. This was corroborated in a declaration submitted by the deputy district attorney who negotiated the plea, stating, "It is not the policy of this office to assist defendants in avoiding federal consequences of their criminal actions." The declaration further stated, "based on the seriousness of the crime, the spousal relationship between defendant and the victim, and the resultant injury to the victim, this office would not have charged anything less than a felony violation of Penal Code Section 273.5."

Burk testified she advised defendant of his options in light of the lack of a factual basis for an alternative plea and the risk of a great bodily injury enhancement if the matter proceeded to trial. She informed defendant of the immigration consequences of a plea to section 273.5 and determined defendant understood and accepted he would be deported. Defendant never indicated it was his priority to stay in the United States or he was willing to risk the great bodily injury enhancement; instead, he wanted to take the credit for time served offer.[4] Defendant signed a *Tahl*[5] waiver of his constitutional rights, which specifically notified him in Spanish of the immigration consequences of his guilty plea.[6] After being advised of his rights by the trial court, defendant voluntarily pleaded guilty.

---

[4] The district attorney offered defendant credit for his time served and felony probation in domestic violence court.

[5] *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*).

[6] The waiver read in relevant part: "I understand that if I am not a citizen of the United States, conviction of the offense(s) may/will . . . have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

At the conclusion of the hearing, the trial court denied the motion to vacate the judgment, finding defendant received effective assistance of counsel. The court found the availability of other reasonable plea options was speculative. The court found such options were unlikely in light of the district attorney's plea offers, defendant's prior domestic violence incident, defendant's prior conviction, the physical injury to the victim, and the possibility of a great bodily injury enhancement being added.[7]

Defendant timely appealed from the order denying his motion to vacate the judgment.

## II.  DISCUSSION

### A.  *Applicable Law*

A decision to deny a motion to withdraw a guilty plea rests in the sound discretion of the trial court and is final unless the defendant can show a clear abuse of discretion. (*People v. Waters* (1975) 52 Cal.App.3d 323, 328.)  On review, the court must adopt the trial court's factual findings if they are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  Moreover, the trial court's witness credibility determinations must be accepted if reasonably justified by the record. (See *People v. Quesada* (1991) 230 Cal.App.3d 525, 533, superseded by statute on another point as stated in *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206–1207, fn. 5.)

A defendant seeking to withdraw a guilty plea under section 1018 must demonstrate good cause through clear and convincing evidence by showing the original plea was not freely and voluntarily given.[8] (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617.)  It is not enough that a defendant has concluded he or she did not correctly assess the wisdom of the plea bargain or otherwise has had a change of mind; so-called

---

[7] Defendant had been involved in a previous domestic violence incident and has also been convicted of unauthorized use of personal identifying information under section 530.5.

[8] Section 1018 reads, in relevant part:  "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

"buyer's remorse" does not constitute good cause. (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.) Even if defendant was reluctantly persuaded by his attorney or others to plead guilty, this does not rise to the level of good cause. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.)

When the basis for withdrawal of a guilty plea is ineffective assistance of counsel, a defendant has the burden of showing "(1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146–1147 (*Montoya*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) Defendant's ineffective assistance claim falls short under both prongs.

## B. *Counsel's Performance Was Not Deficient*

To satisfy the first prong of this test, a defendant must show counsel's performance was not only deficient, but also "cannot be explained on the basis of any knowledgeable choice of tactics." (*Montoya*, *supra*, 149 Cal.App.4th at p. 1147.) Defendant contends his trial counsel was ineffective in failing to research, advise him of, and attempt to negotiate for an alternative plea deal with a stiffer penalty than he was offered under section 273.5 but no negative immigration consequences.[9] We disagree.

A reviewing court will indulge in a strong presumption that counsel's performance fell within the wide range of reasonable professional competence and that counsel's actions and inactions can be explained as a matter of sound strategy. (*Strickland*, *supra*, 466 U.S. at p. 689.) Here, defendant has not overcome that presumption. Counsel has a duty to conduct a reasonable investigation or to make a reasonable decision that investigation is unnecessary. (*Id*. at p. 691.) Prior to defendant's change of plea hearing on November 13, 2012, defendant's trial counsel investigated the possible immigration

---

[9] Defendant proposes he could have offered to plead guilty to felony witness dissuasion and accept a midterm, two-year state prison term for the offense. (See *People v. Nuckles* (2013) 56 Cal.4th 601, 611 [felony § 136.1 violation has sentencing range of 16 months, two, or three years].)

consequences that would result from a conviction of section 273.5. Counsel's decision not to contact an immigration attorney is reasonable in light of her prior experience with immigration issues and her decision to conduct her own research. Counsel also has a duty to inform a client whether the plea carries a risk of deportation. (*Padilla v. Kentucky* (2010) 559 U.S. 356, 374 (*Padilla*).) Counsel testified and defendant readily admits that counsel advised him of the negative immigration consequences of a plea to section 273.5.

Furthermore, there is a plausible tactical explanation for counsel's decision not to negotiate for a "plea up" to a different charge including a state prison term, but with no adverse immigration consequences. Counsel testified she considered alternative pleas that would not have had immigration consequences, including false imprisonment (§ 236) or witness dissuasion (§ 136.1). The district attorney declined the lesser charge of false imprisonment. Defense counsel did not consider witness dissuasion a viable alternative because there was no factual basis for that charge.[10] Moreover, counsel believed she could not plausibly argue to the prosecutor that a section 136.1 plea would provide a fair resolution to the case, since such a plea would not reflect the physical violence or severity of the victim's injuries involved. Defendant proposes no other viable alternative plea.

In counsel's past experiences with the Sonoma County District Attorney's office, she found prosecutors would not accept a plea to a different charge solely to protect a defendant's immigration status. The deputy district attorney corroborated this testimony, noting by declaration it was not the policy of the district attorney's office to consider immigration consequences during plea bargaining. Counsel's decision not to attempt to negotiate for a plea to a section 136.1 violation was reasonable based on her past experience with the district attorney's office and her belief the facts did not support the charge.

_____

[10] According to the police report, after the victim threatened to call the police, defendant only said, " 'I don't care; I want to go back to Mexico' "; he did nothing to try to dissuade her from reporting the offense, and had no further interaction with her before she spoke to police. Defendant claims counsel should have interrogated him and his wife to determine if there was a factual basis for a witness dissuasion plea, but nothing in the record supports defendant's speculative suggestion such facts might have existed.

The court may also consider the effect of defendant's statements on counsel's actions. (*Strickland*, *supra*, 466 U.S. at p. 691.) Defendant never indicated his immigration was a priority, but did tell counsel his attempt to legally stay in the United States was "probably a lost cause" and "he was okay with that." This further explains counsel's choice to focus on minimizing the criminal consequences of defendant's conduct. In her opinion, defendant could face a longer prison sentence, strike consequences, and ineligibility for probation if he did not take the credit for time served offer. The trial court obviously credited counsel's testimony on this point, and we cannot reassess the credibility of such testimony where it is supported by substantial evidence. (*People v. Callahan* (2004) 124 Cal.App.4th 198, 211.)

Defendant also suggests counsel "rushed" him into accepting the plea offer despite the fact section 1016.5, subdivision (b) allowed counsel to pocket the prosecution's offer, with no possibility of it being withdrawn, and still work on a plea that would address the immigration problem.[11] Contrary to defendant's contention, he was not rushed into entering the plea. Trial counsel testified she met with defendant and discussed the facts of his case; she was willing to meet with defendant further, but he did not ask to do so. She met with him again on the day of the plea, and got the impression defendant was satisfied with the credit for time served offer. Given all of the circumstances described, there was no reason to request more time to negotiate.

Because there is a satisfactory explanation for counsel's decision not to negotiate for a plea with stiffer penalties but no immigration consequences, there is no basis for finding her performance constitutes inadequate representation.

---

[11] Section 1016.5, subdivision (b) provides the court must allow the defendant additional time upon request to reconsider a plea with adverse immigration consequences. During this time, the defendant can attempt to negotiate a different bargain that will not have the same consequences without risking loss of the existing plea bargain. (*People v. Martinez* (2013) 57 Cal.4th 555, 562 (*Martinez*).)

**C.** *No Prejudice to Defendant*

Even assuming counsel's performance was deficient, defendant must show but for counsel's alleged failings, it is reasonably probable the result of the proceeding would have been more favorable to him. (*People v. Seaton* (2001) 26 Cal.4th 598, 666.) Where the issue is raised in the context of a guilty plea, the defendant must establish there is a reasonable probability he would have rejected the existing plea offer if properly advised. (*Martinez, supra*, 57 Cal.4th at p. 567.) Defendant maintains he would not have pleaded guilty to willful infliction of corporal injury if he knew of other plea options without immigration consequences.

We find no reasonable probability defendant would have rejected the plea offer. The court is under no obligation to accept a defendant's self-serving statement, made after conviction, that with competent advice he would have rejected the plea offer. (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.) Here, the evidence contradicts defendant's postconviction statement. Prior to conviction, defendant expressed his desire to accept the credit for time served offer. Additionally, defendant was aware he would be deported if convicted, yet gave his trial counsel no indication his priority was avoiding immigration consequences rather than criminal consequences. In fact, defendant felt his attempt to legally stay in the United States was a lost cause and he gave his trial counsel the impression he was satisfied with the plea bargain. Even though counsel was willing to further discuss the case, defendant never asked to do so.

In considering whether defendant would have rejected the plea offer, the court can consider the probability defendant would have obtained a more favorable outcome by rejecting the plea. (*Martinez*, *supra*, 57 Cal.4th at p. 564.) Defendant's choice during plea negotiations is not "between, on the one hand, pleading guilty and being deported and, on the other, going to trial and avoiding deportation." (*In re Resendiz* (2001) 25 Cal.4th 230, 254, abrogated on another ground in *Padilla*, *supra*, 559 U.S. at pp. 370–371.) A defendant who withdraws a plea loses the benefit of the bargain and may end up with a less favorable outcome. (*Padilla*, at p. 373.) The defendant "must convince the

9

court he or she would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow." (*Martinez*, at p. 565.)

Here, rejecting the plea offer would not necessarily have resulted in a more favorable outcome for defendant. As acknowledged in his signed *Tahl* waiver, defendant could have received up to three years' jail time for the section 273.5 violation alone. If defendant rejected the credit for time served offer, he risked going to trial on the existing section 273.5 charge plus a great bodily injury enhancement, thus facing the possibility of a longer prison sentence, strike consequences, ineligibility for probation, as well as negative immigration consequences. Counsel advised defendant of the risks and he opted to take the credit for time served offer. In light of the negotiations preceding the offer and the district attorney's office policy against considering immigration consequences, defendant fails to show there was any other likely scenario under which further negotiations would have improved his choices.[12] In the absence of a showing of prejudice, there is no basis for reversal on grounds of ineffective assistance. (*People v. Davis* (2005) 36 Cal.4th 510, 551.)

Defendant has failed to meet his burden of showing the trial court abused its discretion in denying his motion to vacate the judgment.

## III. DISPOSITION

The judgment is affirmed.

---

[12] Even assuming defendant could have pleaded guilty to witness dissuasion and agreed to a midterm sentence of two years in state prison, he would not be guaranteed a better immigration outcome. To actually obtain cancellation of removal, defendant must establish his United States citizen wife, the victim of his offense, would suffer "exceptional and extremely unusual hardship" due to his deportation. (8 U.S.C. § 1229b(b)(1)(D).) This is a high bar to clear; such hardship must be substantially different from, or beyond, that which would normally be expected from the deportation of a close relative. (*Alvarado v. Holder* (2014) 743 F.3d 271, 275.) Moreover, even if defendant satisfies the statutory prerequisites, it remains in the discretion of the Attorney General whether to suspend deportation. (*I.N.S. v. Rios-Pineda* (1985) 471 U.S. 444, 446.) Defendant offers no evidence regarding his likelihood of avoiding deportation had he pleaded guilty to felony witness dissuasion.

10

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11