Filed 10/15/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHAWN OTIS HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B333071<br>(Super. Ct. No. 2023000637)<br>(Ventura County) |

Code of Civil Procedure[1] section 231.7 prohibits discrimination in jury selection based on race, ethnicity, gender, and membership in other enumerated protected classes. Here we hold that youth, alone, is not a cognizable group under section 231.7. We also hold that a party objecting to the dismissal of a juror based on actual or perceived membership in a protected class under section 231.7 must object in the trial court or otherwise forfeits such a claim on appeal.

Shawn Otis Hernandez appeals from the judgment after a jury convicted him of conspiracy to commit first degree

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

residential burglary (Pen. Code, §§ 182, subd. (a)(1), 459; count 1) and attempted first degree residential burglary (Pen. Code, §§ 664, 459; count 2).  The court sentenced Hernandez to 17 years in state prison.

Hernandez contends the trial court erred when it denied his objection to the prosecution's exercise of peremptory challenges against jurors based on their youth, and that trial counsel rendered ineffective assistance by failing to challenge the dismissal of jurors based on their ethnicity and gender.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

*The attempted burglary*

J.C. was awakened at her home at about 2:40 a.m. by someone ringing her doorbell and banging on her front door.  She saw at least two flashlights in her backyard shining through her kitchen window.  She heard her sliding glass door shatter.  A neighbor saw three men run through her backyard.

Hernandez's participation in the crime was established by cell phone records of phone calls, texts, and his and his companions' physical location near the scene of the crime; home security video; Hernandez's wallet found in a vehicle driven by Hernandez's cohorts who fled from the scene; records from a ridesharing service; DNA analysis of a glove found near the crime scene; evidence of a similar incident hours earlier; and a stipulation that Hernandez was previously convicted of a residential burglary he committed with three others.

*Jury selection*

Hernandez made a *Batson/Wheeler* motion for a mistrial based on the prosecution's exercise of peremptory challenges against jurors under the age of 25.  (*Batson v. Kentucky* (1986)

476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), overruled in part by *Johnson v. California* (2005) 545 U.S. 162.)  Defense counsel said that four of the prosecution's six peremptory challenges were used against jurors under the age of 23 or 25: J.R.R., W.R., C.S.,[2] and the anticipated dismissal of M.R.  The trial court stated that age was a cognizable group pursuant to section 231.5.  The court said, "[I]t's not really a Batson-Wheeler, what you've described . . . . It's really a [section] 231.7 process that we need to engage in at this juncture."  Defense counsel agreed.

At no time did defense counsel suggest his objection was based on the prosecution excusing Hispanics,[3] persons with Spanish surnames, males, or any category other than youth.  The prosecutor noted that four of the five jurors he excused were "white males," and he had not excused four other "youthful" jurors.  The court asked the prosecutor "to articulate juror by

---

[2] Hernandez does not challenge the exclusion of C.S. on appeal.

[3] We refer to the prospective jurors as Hispanic, which is the term used by appellate counsel.  " 'Hispanic' is defined as 'of, relating to, or being a person of Latin American descent and especially of Cuban, Mexican, or Puerto Rican origin living in the U.S.,' or 'of or relating to the people, speech, or culture of Spain,' " or "as 'from or connected with Spanish-speaking countries, especially those in Latin America, or having parents or grandparents from these countries.' "  (*Unzueta v. Akopyan* (2022) 85 Cal.App.5th 67, 72, fn. 2.)  "The term 'Latinx' (a gender-neutral form of Latino and Latina), which is defined as 'of, relating to, or marked by Latin American heritage,' would alternatively describe the jurors."  (*Ibid*.)

juror the basis for exercise of the peremptories."

### 1. J.R.R.

J.R.R. was a 24-year-old male with a Spanish surname. He made a written request under penalty of perjury to be excused from jury service based on "undue personal hardship," which the trial court denied.

J.R.R. had recently lost his job and was actively looking for work. He hoped to have job interviews the following week, but the trial was estimated to last beyond that week. He said it would be "difficult" to serve on the jury because if he got a job and needed to start right away, he would have to tell them he had to wait, and it "would prolong [him] getting a job." He said if an employer called him, he would lose a job opportunity, which would be a financial burden. But J.R.R. said if he was selected for the jury, he would "put it aside" and give the case his "full attention."

The prosecutor said he excused J.R.R. because he was looking for work, and if he served on the jury, he "would be actively missing interviews potentially or coming up with a revenue stream."

### 2. W.R.

W.R. was a 19-year-old male college student. The parties do not claim he is Hispanic or has a Spanish surname. The prosecutor said he excused W.R. because he had "serious reservations he would be able to pay attention and follow along in the evidence."

The prosecutor said W.R.'s "head [was] consistently down," he failed to make eye contact, and the prosecutor, who was sitting closest to him, observed "him close his eyes numerous times." Defense counsel noted that W.R. was "very reticent in speaking,

4

and his body language was one that appeared to be *distracted* in that he kept his head down most times, but I did not notice him to be nodding off at any point." (Italics added.) The trial court confirmed "his head was down, definitely down, chin to his chest," and this occurred "the entire time unless he was specifically being spoken to" by one of the attorneys. The court could not tell if W.R.'s eyes were closed because a podium blocked the court's view and W.R.'s hair was in his face.

The prosecutor said jurors "stay[ing] engaged" and "paying attention" were important in the case (see § 231.7, subd. (g)(2)) because the trial evidence was "complex and dense," including "three or four different cell phones, tracking it on a map[,] . . . laying foundation and affidavits and search warrants for various companies . . . [and] potential DNA evidence."

The prosecutor told W.R. he had been "looking down" and asked if he was "feeling okay." W.R. responded, "I'm good" and said he had "no issues with staying awake."

### 3. M.R.

M.R. is female and has a Spanish surname. She did not give her age. The court could not tell from her appearance if she was "over 25 or under 25."

M.R. was entering her junior year of college studying criminal justice. She took a class on juvenile justice where she learned about "restorative justice and . . . not to focus on retribution." She agreed "the course work is geared a little bit towards not necessarily punishment but restorative justice." She described it as "[f]ocusing on the individual and if they need more help rather than again, like, punishment. Focusing, like, if they were committing crimes for a reason, why were they doing it instead of they did it, they need to go to jail or something like

5

that. If they were stealing something or whatever, why were they? Are they in financial hardship? Maybe if we can help them find a job or if they need—stuff like that."

M.R. said she would follow the law given by the judge "regardless of what [she] may have learned at school." When asked if her coursework would influence her listening to the evidence, she responded, "Not really."

The prosecutor said he excused M.R. because "she's studying criminal justice. . . . I have serious reservations given some of the coursework she's taken in terms of steering away from punishment . . . . [¶] I find it hard to believe she would put that experience aside, what she's learned in terms of criminal justice."

### 4. Ruling

The court overruled "the 231.7 objection." It found the attorneys' questions of prospective jurors, including their number, topics, length, and extent, were "uniform and consistent," and "nobody was singled out in any particular way." The court also found the prosecutor's reasons were "valid" and "supported by the record." And it found no "substantial likelihood that age was a factor in use of the peremptory challenge[s]."

The court's ruling was supported by the following section 231.7 circumstances regarding whether unconscious bias was a factor justifying the prosecutor's peremptory challenges (§ 231.7, subd. (d)(3)(A)(i), (ii), (iii)): Hernandez was 31 years old. The victim was 70. The attorneys represented that no civilian witness was under 25, and the prosecutor was uncertain whether any police officer witness was under 25. The trial court noted that several jurors who appeared young remained on the panel.

6

The record reflects the prosecution exercised peremptory challenges against a total of six jurors, including five males. The defense exercised seven peremptory challenges, also excusing five males. The empaneled jurors included at least five males.[4] There was no inquiry or discussion of ethnicity in the trial court, but it appears potential jurors with Spanish surnames were excused by both parties.

## DISCUSSION

" 'Under *Wheeler, supra,* 22 Cal.3d 258, "[a] prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias—that is, bias against 'members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds'—violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community." ' " (*People v. Hartsch* (2010) 49 Cal.4th 472, 486.) It " ' "also violates the defendant's right to equal protection under the Fourteenth Amendment." ' " (*Ibid.*)

*Batson/Wheeler* challenges employ a three-step burden-shifting process. (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 277–278 (*Uriostegui*), disapproved on another point in *People v. Garcia* (Oct. 6, 2025, B330884) __ Cal.App.5th __ [2025 Cal.App. Lexis 633 at pp. *2, 16–17].) Because of concerns the *Batson/Wheeler* process failed to protect against implicit bias, the Legislature enacted section 231.7, " 'which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges.' " (*Uriostegui,* at p. 278.)

### *Exclusion of young jurors*

Hernandez contends the trial court erred in overruling his

---

[4] The gender of one juror cannot be determined from the record.

7

objection to the prosecution's exercise of peremptory challenges against young jurors.  We disagree.

Citing *Batson / Wheeler*, Hernandez objected to the prosecutor excusing jurors under the age of 25.  (*Batson*, *supra*, 476 U.S. 79; *Wheeler*, *supra*, 22 Cal.3d 258.)  The court stated that excusing jurors based on youth was prohibited by section 231.5 and reviewed the objection pursuant to the provisions of section 231.7.  We conclude that neither *Batson / Wheeler*, section 231.5, nor section 231.7 prohibits excusing jurors based on youth, alone.  We also conclude the procedures of section 231.7 do not apply.

The youth of prospective jurors is not a valid basis for a *Batson/Wheeler* challenge.  "A potential juror's youth and apparent immaturity are race-neutral reasons that can support a peremptory challenge." (*People v. Lomax* (2010) 49 Cal.4th 530, 575.)  "Young people do not constitute a cognizable class for purposes of the cross-section rule." (*People v. Henderson* (1990) 225 Cal.App.3d 1129, 1153, cited with approval in *People v. Sims* (1993) 5 Cal.4th 405, 430.)  Nor are young people a cognizable group for purposes of equal protection. (*People v. Lucas* (2014) 60 Cal.4th 153, 256.)  Hernandez has cited no authority that supports his contention that excusing young jurors violated his right to due process.  On the contrary, our Supreme Court has concluded that excusing a juror based in part on youth is "a constitutionally permissible basis for the exercise of . . . peremptory challenges." (*Sims*, at p. 430.)

Nor does excluding a juror based on youth violate section 231.5.  It provides: "A party shall not use a peremptory challenge to remove a prospective juror on the basis of an assumption that the prospective juror is biased merely because of a characteristic

listed or defined in Section 11135 of the Government Code, or similar grounds." The cross-referenced section prohibits discrimination or denial of public benefits based on various categories, including "age." (Gov. Code, § 11135, subd. (a).) It further provides, "The protected bases referenced in this section have the same meanings as those terms are defined in [Government Code] Section 12926." (Gov. Code, § 11135, subd. (c).) Government Code section 12926, subdivision (b) in turn states: " 'Age' refers to the chronological age of any individual who has *reached a 40th birthday*." (Italics added.) The law thus prohibits age discrimination in jury selection against persons age 40 or older but not those under age 25.

This statutory definition of age for purposes of prohibiting discrimination furthers the policy of the California Fair Employment and Housing Act (FEHA) to prohibit discrimination against "older workers." (Gov. Code, § 12941.) In interpreting FEHA, California courts often look to the federal Age Discrimination in Employment Act of 1967 (ADEA). (*Reno v. Baird* (1998) 18 Cal.4th 640, 647.) ADEA prohibits discrimination against individuals "at least 40 years of age" (29 U.S.C. § 631(a)), but not discrimination "favoring the old over the young." (*General Dynamics Land Systems, Inc. v. Cline* (2004) 540 U.S. 581, 584).

Young people are also not included in the groups encompassed by section 231.7. It provides: "A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) Other subdivisions of section 231.7

reference the same categories, e.g., subdivision (d)(1) (whether an objectively reasonable person would view race, ethnicity, gender, etc., as a factor in excusing the juror) and subdivision (e) (reasons presumed invalid unless unrelated to race, etc.).  Section 231.7 was enacted to prevent discrimination against "*those groups*." (Stats. 2020, ch. 318, § 1(a) & (b), italics added.)  Thus, the plain language of section 231.7 does not apply to age.

"[S]ection 231.7 has a narrower scope of protected classes than section 231.5."  (*Unzueta v. Akopyan*, *supra*, 85 Cal.App.5th at p. 77, fn. 6.)  Thus, challenges pursuant to section 231.5 not covered by section 231.7 are litigated pursuant to *Batson/Wheeler*.  (*Unzueta*, at p. 81.)  But neither the procedure provided in section 231.7 nor the *Baston/Wheeler* procedure applies to claims based on youth, which is not a cognizable category.  The trial court thus erred in applying the procedures, presumptions, and findings specified in section 231.7 to the claim of discrimination based on youth.  But the error is harmless because it merely subjected the prosecution's peremptory challenges to scrutiny the court was not required to undertake.

Moreover, section 231.7 was intended to address "reasons routinely advanced to justify the exclusion of jurors from protected groups [that] are in fact associated with stereotypes about *those groups*" (i.e., race, etc.).  (Stats. 2020, ch. 318, § 1(b), italics added; see § 231.7, subd. (g)(1).)  Section 231.7 does not seek to prevent excluding young people, or suggest that unemployment (*id.*, subd. (e)(11)) or being "inattentive . . . or failing to make eye contact" (*id.*, subd. (g)(1)(A)) or exhibiting "problematic . . . body language" (*id.*, subd. (g)(1)(B)) are stereotypes historically used as pretexts to excuse young people. Because the provisions of section 231.7 do not apply to challenges

10

based on youth, it does not entitle Hernandez to relief.  Nor does *Batson/Wheeler* apply because youth is not a cognizable category.

*Exclusion of Hispanics and males*

Hernandez contends for the first time on appeal that J.R.R. and M.R. were improperly excused because they are Hispanic, and J.R.R. and W.R. were improperly excused because they are male.  Ethnicity and gender are cognizable groups regarding jury selection.  (§ 231.7, subd. (a).)  "Hispanics 'are members of a cognizable class for purposes of *Batson/Wheeler* motions,' and exclusion of persons based on a Spanish surname may be impermissible based on association with a cognizable group." (*Uriostegui*, *supra*, 101 Cal.App.5th at p. 279.)  But Hernandez forfeited challenges to exclusion of jurors because they were male, Hispanic, or had Spanish surnames by failing to object in the trial court based on these categories.  (*People v. Cunningham* (2015) 61 Cal.4th 609, 662 [*Batson/Wheeler* objection forfeited by failing to identify specific cognizable group].)  Our review is thus limited to the category raised in the trial court (youth) and does not extend to additional categories raised for the first time on appeal.  (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 759, fn. 16 [*Batson/Wheeler* challenge].)

Cases construing the California Racial Justice Act of 2020 (RJA; Pen. Code, § 745) provide guidance here.  The RJA, like section 231.7, serves the important purpose of eliminating "racism and unfairness in[] proceedings" stemming from intentional or implicit bias.  (*People v. Lashon* (2024) 98 Cal.App.5th 804, 809 (*Lashon*).)  But a claim pursuant to the RJA and "any other appellate claim, is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court."  (*Lashon*, at p. 812.)

11

"A timely objection serves to alert the court and parties to the nature of the claim and objecting counsel's reasons for it, such that opposing counsel can address it and the trial court can make a fully informed ruling on an adequately developed record." (*People v. Wagstaff* (2025) 111 Cal.App.5th 1207, 1220 [RJA claim forfeited].)  Because he objected in the trial court based only on the jurors' youth, and not based on any legally cognizable group characteristic, Hernandez may not "pursue such a claim for the first time on direct appeal where it could have been but was not raised in the trial court." (*Lashon*, *supra*, 98 Cal.App.5th at p. 813.)

Hernandez contends the issue is not forfeited because it involves "fundamental rights."  (See *People v. Vera* (1997) 15 Cal.4th 269, 276–277.)  "The right to a jury drawn from a fair cross-section of the community is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 16 of the California Constitution."  (*People v. De Rosans* (1994) 27 Cal.App.4th 611, 618.)  But "that dictum in *Vera* was not intended to provide defendants with an 'end run' around the forfeiture rule, thus eviscerating it." (*People v. Tully* (2012) 54 Cal.4th 952, 980, fn. 9 [4th Amend. challenge forfeited].)  " ' " '[A] constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593.)  Because Hernandez did not raise the exclusion of males or Hispanics in the trial court, the record is not sufficiently developed to dispose of the merits of this claim on appeal.

Hernandez also requests that we excuse the forfeiture as "a claim raising a pure question of law on undisputed facts."  (*People*

12

*v. Yeoman* (2003) 31 Cal.4th 93, 118.) But that exception does not apply here. Because Hernandez never raised the issue of ethnicity or gender in the underlying trial proceedings, the trial court never inquired about it. For example, the trial court never inquired whether "[t]he objecting party is a member of the same perceived cognizable group as the challenged juror" (§ 231.7, subd. (d)(3)(A)(i)), or whether ethnicity or gender "bear on the facts of the case to be tried" (*id.*, subd. (d)(3)(B)). And the trial court was never asked to determine whether "there is a substantial likelihood that an objectively reasonable person would view . . . ethnicity [or] gender . . . as a factor in the use of the peremptory challenge." (*Id.*, subd. (d)(1).) Because the trial court did not develop a factual record or make factual findings on these issues because they were not raised by Hernandez, we cannot do so in the first instance. For the same reasons, we decline the invitation to review this forfeited issue based on a cold, undeveloped record. (*People v. McCullough*, *supra*, 56 Cal.4th at p. 593.)

*Ineffective assistance of counsel*

Hernandez seeks to avoid the forfeiture rule by contending the lack of objection to the peremptory challenges based on ethnicity and gender constituted ineffective assistance of counsel. We are not persuaded.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish both that his or her counsel's performance was deficient, and that he or she suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) " ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's

13

conduct falls within the wide range of reasonable professional assistance.' " . . . In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) "Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction." (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.)

A claim of ineffective assistance of counsel is not "the universal solvent" to procedural default. (*People v. Provencio* (1989) 210 Cal.App.3d 290, 303.) The fact the prosecutor excused five male jurors and several jurors with Spanish surnames did not impose a duty on defense counsel to claim bias based on membership in those groups. " 'Competent counsel is not required to make all conceivable motions' " but should " 'pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances.' " (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147–1148.) Considering the jurors' statements and conduct, a reasonable attorney could conclude they were not excused based on their ethnicity or gender. The record showed that J.R.R. was excused based on the hardship request he filed. M.R. was studying criminal justice, including restorative justice and helping rather than punishing offenders. The parties do not claim W.R. is Hispanic or has a Spanish surname, and at least four of the empaneled jurors were male.

Moreover, the prosecution noted the defense had used "four of seven peremptory challenges [against] people of a cognizable

14

group," but the prosecution declined to "mak[e] a formal 231.7 motion at this time." Defense counsel may have made a reasonable tactical decision that raising the issue of ethnicity or gender could result in a section 231.7 objection against the defense, which could result in reseating jurors not favorable to the defense.

Based on our record, Hernandez has not shown his "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." (*Strickland*, *supra*, 466 U.S. at p. 688.) Nor has Hernandez shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.) Even if an objection had been made based on ethnicity or gender, the record does not show that either category was a factor in excusing the jurors. (§ 231.7, subd. (d)(1).)

The prosecutor excused J.R.R., not because he was unemployed (see § 231.7, subd. (e)(11)), but because he was *seeking employment* and was concerned that jury service might interfere with his ability to get a job. Although J.R.R. said he could give the case his "full attention," the "prosecutor [was] not required to take that juror's answers ' " 'at face value.' " ' " (*People v. Battle* (2021) 11 Cal.5th 749, 779.) On this record, "an objectively reasonable person would view the rationale as unrelated to [the] prospective juror's . . . ethnicity [or] gender." (§ 231.7, subd. (e).)

No one contends that W.R. is Hispanic. And at least five males were selected to serve on the jury. The prosecutor excused W.R. because he sat with his head down most of the time. (See § 231.7, subd. (g)(1)(A) & (B).) Defense counsel confirmed W.R.

15

was "distracted." Based on these confirmed observations, the prosecutor was concerned whether W.R. was paying attention or was even awake. This can demonstrate "a race-neutral characteristic that any reasonable prosecutor trying the case would logically avoid in a juror." (*People v. Rhoades* (2019) 8 Cal.5th 393, 431.)

Finally, defense counsel expressed concern about the prosecutor's anticipated challenge to M.R. Hernandez contends M.R. could be fair despite her statements about her coursework. But a prosecutor is not required to *prove* a juror would be unfair. Instead, the standard, even for presumptively invalid reasons, is whether "by clear and convincing evidence . . . an objectively reasonable person would view the rationale as unrelated to a [suspect category] and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e).) M.R.'s statements about helping rather than punishing offenders reflect a philosophy that "justifiably would have raised significant concerns" for "[a]ny reasonable prosecutor." (*People v. Battle*, *supra*, 11 Cal.5th at pp. 779, 781.)[5]

Because Hernandez has not shown that trial counsel's performance was deficient, or that additional objections were reasonably likely to produce a different outcome, ineffective assistance of counsel has not been shown.

---

[5] Because we conclude an objection regarding M.R. based on ethnicity would not have been meritorious, we do not reach Hernandez's contention that his counsel was ineffective by failing to renew his objection and obtain a ruling after she was excused.

16

DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Catherine Voelker, Judge

Superior Court County of Ventura

_____

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.