Filed 12/11/25  P. v. Bauer CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN ROBERT BAUER,<br><br>    Defendant and Appellant. | C101274<br><br>(Super. Ct. Nos. CR038986, 2021-CR0050264) |

Following remand from this court for a full resentencing, the trial court sentenced defendant Ryan Robert Bauer to an aggregate term of nine years four months.  In this second appeal, defendant raises three issues.  First, he contends the trial court abused its discretion when it denied his *Romero* motion to strike his prior burglary conviction.[1]  He also contends defense counsel rendered ineffective assistance of counsel by failing to

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

investigate and provide additional evidence of the genesis of his drug addiction and his mental health issues, which would have supported the *Romero* motion and persuaded the court to impose a lower term.  Finally, defendant contends that the trial court erred when it failed to award him credits for his actual days in custody.  We agree the trial court miscalculated defendant's credits and will remand with directions for the court to recalculate his credits and correct the abstract of judgment.  In all other respects, we affirm the judgment.

## I.  BACKGROUND

Shortly after midnight on May 17, 2021, defendant smashed through the glass of Gregory and Kimberly's front door while they were home with their children.  (*People v. Bauer* (Jul. 10, 2023, C095770) [nonpub. opn.] (*Bauer I*).)[2]  Once inside, defendant placed Gregory in a headlock.  (*Ibid*.)  Gregory escaped and defendant barricaded himself inside the home.  (*Ibid*.)  When law enforcement arrived and tried to arrest defendant, he struggled, kicking one officer in the leg.  (*Ibid*.)  After his arrest, defendant agreed to speak with law enforcement and admitted that he used methamphetamine about an hour before the incident.  (*Ibid*.)

### A.    *Original Sentencing*

Defendant pled guilty to one count of false imprisonment by violence (Pen. Code, § 236),[3] two counts of felony vandalism (§ 594, subd. (a)), two counts of obstructing an officer (§ 69), one count of misdemeanor battery (§ 242), and one count of misdemeanor trespass (§ 602.5, subd. (b)).  Defendant also admitted a prior strike conviction, which stemmed from the burglary of his parents' home in 2015.  (§ 667, subds. (b)-(i).)

---

[2] We construed defendant's request for judicial notice as a motion to incorporate by reference the records in case Nos. C095770 and C082385, and as such granted the request.

[3] Undesignated statutory references are to the Penal Code.

Before sentencing, defendant submitted a statement to the probation officer and a letter to the trial court recounting the history of his substance abuse, including information of an accident that amputated two of his fingers and the ensuing treatment that led to his addiction to substances. While the matter was pending, defendant contacted Delancy Street Foundation about their drug treatment program. They provided several options to interview him. Ultimately, defendant did not attend the program.

Before sentencing defendant, the trial court reviewed the victims' statement, the probation officer's report and recommendation, a letter from Delancey Street Foundation, defendant's written statement attached to the probation officer's report, and the letter defendant submitted directly to the court. The court also heard testimony from the responding officers, both of whom described the offense as one of the most extreme they have experienced based on how terrified the victims were, and the amount of damage done to the home in such a short period of time. The court believed defendant had "a self-induced methamphetamine psychosis." It also believed defendant deserved a prison sentence for what he did. The trial court sentenced defendant to an aggregate term of 12 years 10 months imprisonment. (*Bauer I, supra*, C095770.) Defendant appealed.

On appeal, we remanded for a full resentencing with instructions for the trial court to stay the sentence on either the vandalism count for the damage to the front door or the trespass count under section 654. (*Bauer I, supra*, C095770.) We also instructed the trial court to "further exercise its sentencing discretion under all applicable law." (*Ibid.*)

B.      *Resentencing*

On remand, the judge who imposed defendant's original sentence conducted his resentencing. As part of the resentencing, the trial court considered defendant's *Romero* motion to strike his burglary conviction. Defendant's motion argued that he fell outside the spirit of the Three Strikes Law because he is not a violent career criminal. Not only did he lack a "significant violent criminal history," his prior strike was nine years old and stemmed from the burglary of his parents' home for a small amount of money.

3

At the hearing, defense counsel also raised concerns about defendant's mental health at the time of the current offense, arguing that defendant "was basically out of his mind. He was not coherent. He was not rational. He was paranoid." "[I]t's not an excuse, but for basically what I would consider a paranoid state of mind based on drug use, he would never have been in that house." Defense counsel contrasted those circumstances with defendant's current demeanor, noting that now that defendant is "clean and sober," "he seems very coherent, logical."

The People opposed the motion to dismiss, noting that the prior strike conviction was "not incredibly old," defendant was properly advised when he pled guilty to it, and he was not a youthful offender. While the People speculated defendant was "in some sort of drug induced psychosis" at the time of the offense, the People objected to what it viewed as an attempt to use defendant's substance abuse issues to avoid responsibility for the burglary and the current offense. "[E]ven if he wants to use his drug addiction as the excuse or explanation for why he burglarized his parent's home, he should not be afforded the same opportunity to keep using that as an excuse for future criminal behavior because it shows his inability or unwillingness to learn from his mistakes."

Defense counsel disagreed that defendant was "blaming anything on the drugs." Rather, his reaction to drugs was "a fact of what happened" that the court "should take into account." Defense counsel asked the court to strike the burglary conviction and sentence defendant to the upper term of three years on the false imprisonment by violence count, eight months consecutive on one count of obstructing an officer, and concurrent sentences on the remaining counts for an aggregate sentence of four years four months.

The trial court denied the *Romero* motion. In doing so, the court considered the circumstances of the current felony, noting the impact on the "completely innocent victims, that in the middle of the night, somebody is breaking into their house and they have small children." The court also considered the circumstances of defendant's prior

4

strike conviction and the burglary of his parents' home. It also reviewed defendant's prior adult history, focusing on several opportunities defendant had to obtain help with his substance abuse problems after the burglary—Teen Challenge and Delancey Street Foundation. The court noted if defendant had availed himself of these opportunities to turn his life around, it would have been "much more inclined to consider granting the *Romero* motion than not." But, "[h]e didn't do that." "[A]nd that decision was, in the Court's opinion, a huge mistake."

After it denied the motion to strike the burglary conviction, the court stayed the sentence for the trespass conviction and imposed an aggregate sentence of nine years four months. The court also imposed various fines and fees.

Defendant noted, and the court agreed, that the abstract of judgment did not include defendant's credits for 437 days. The court scheduled a post report hearing to calculate defendant's presentence credits where it determined defendant had 267 actual days plus 266 conduct credit days for a total of 533 days of presentence credits. The court did not calculate defendant's actual days in custody following the original sentencing. Defendant timely appealed.

## II. DISCUSSION

*A.*     Romero *Motion*

Defendant contends the trial court abused its discretion when it denied his *Romero* motion because his prior and current felonies—burglary and false imprisonment, which were directly related to his drug use, were not "intentionally violent." Combined with his background, character, and prospects, he claims this nonviolent criminal history supported dismissing the strike. We find there was no abuse of discretion.

We review a trial court's refusal to dismiss a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) We do not reverse a trial court's exercise of discretion just " ' "because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the

5

judgment of the trial judge.' " ' " (*Id*. at p. 377.)  Rather, a trial court abuses its discretion only when "its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Ibid*.)

As an initial matter, to the extent defendant argues that the trial court should have applied the factors in section 1385, subdivision (c) when it considered his motion to dismiss the prior conviction, we reject that argument.  The mitigating factors of section 1385, subdivision (c) do not apply to alternative sentencing schemes like the Three Strikes Law.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 243-244.)

The essential question the trial court must answer when considering a motion to dismiss a prior strike allegation is whether defendant falls outside the spirit of the Three Strikes Law.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  In answering that question, the court considers:  (1) the nature and circumstances of the current felony; (2) the nature and circumstances of the prior strike offenses; and (3) the particulars of a defendant's background, character, and prospects for the future.  (*Ibid*.)  In the absence of an affirmative record to the contrary, we presume the trial court considered all relevant factors.  (*People v. Carmony, supra*, 33 Cal.4th at p. 378.)

Here, the record shows that the trial court considered the relevant factors when it denied defendant's motion.  It considered the circumstances of the current felony, noting the impact on the "completely innocent victims."  It also considered the circumstances of defendant's prior strike conviction for the burglary of his parents' home.  And it considered defendant's background, character, and prospects.  Specifically, the court reviewed defendant's prior adult history and focused on several opportunities defendant had to obtain help with his substance abuse problems after his burglary conviction.  The court explained that it would have been "much more inclined to consider granting the *Romero* motion than not" if defendant had availed himself of these opportunities.  It was a "huge mistake" for defendant not to have done so.

The record showed that defendant continued to engage in the substance abuse with increasingly serious consequences to innocent victims and had made no meaningful attempt to address his substance abuse problems through the opportunities available to him. Based on its consideration of the relevant factors, the trial court determined defendant was not outside the spirit of the Three Strikes Law. We find no abuse of discretion.

B. *Ineffective Assistance of Counsel*

Defendant contends defense counsel was ineffective in failing to investigate and provide evidence regarding his mental health, the origin of his drug addiction—his ADHD treatment as a child and the addiction that followed the amputation of his two fingers at age 19—and all available information about his social history. He claims this additional "mitigating information . . . likely would have swayed the court to dismiss the prior strike, or otherwise reduce [defendant's] sentence." We disagree.

To establish constitutionally inadequate representation, a defendant must show that (1) counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) Counsel's performance is deficient if it fell below an objective standard of reasonableness "under prevailing professional norms. (*Id.* at p. 688.) To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.) Prejudice must be established based on facts in the record, not speculation as to the effect of the errors or omissions of counsel. (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1151.) When a defendant challenges a sentence, the question is "whether there is a reasonable probability that, absent the errors, the [court] . . . would have concluded that the balance of aggravating and mitigating circumstances" did not warrant the sentence imposed. (*Strickland*, *supra*, at p. 695.)

7

A defendant must prove both deficient conduct and prejudice to be successful on a claim of ineffective assistance of counsel. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) Therefore, if a defendant makes an insufficient showing as to either prong, we may reject a claim of ineffective assistance of counsel without addressing both components. (*Strickland, supra*, 466 U.S. at p. 697.)

Here, we conclude defendant cannot meet his burden to establish prejudice because the record demonstrates that it is not reasonably probable the trial court would have granted the *Romero* motion or imposed a lower term even if defense counsel provided more evidence at the resentencing about the origin of defendant's addiction or his mental health. (*Strickland, supra*, 466 U.S. at pp. 694-695.) Therefore, we need not address whether defense counsel's performance was deficient. (*Id.* at p. 697.)

As the original sentencing judge, the trial court judge was familiar with defendant and his history. The court stated that it looked at defendant's "prior adult history" and noted that defendant had opportunities to attend Teen Challenge and the Delancey Street program but did not do so. The information about defendant's adult history and his failure to engage in the treatment programs was only included in the probation officer's report prepared for the original sentencing hearing, suggesting the trial court reviewed that report before resentencing him. Information about the origin of defendant's drug addiction—pain management for the amputation of two of his fingers—and his mental health was included in the same probation officer's report and the attachments, which also included two letters from defendant explaining his history.

Defendant has not shown there was additional information about the origin of his drug addiction and his mental health that could have been provided that was not already included in the original probation officer's report and its attachments. More importantly, he has not shown how including additional information would have persuaded the court to grant the *Romero* motion and impose a lower sentence.

8

Crucial to the trial court's decision was defendant's failure to take advantage of programs that would have addressed his substance abuse problems and the extent of the harm he caused to "completely innocent victims" because he failed to do so. Defendant's speculation about the significance of the origin of his drug addiction runs headlong into the court's determination that he had not seriously sought treatment for his drug addiction regardless of how or why it started. Therefore, to the extent there was additional information defense counsel could have provided about how defendant's drug addiction began or his mental health, the record does not show there is a reasonable probability that the information would have changed the trial court's decision. (*Strickland, supra*, 466 U.S. at p. 695.)

Defendant also appears to argue that if the court had more information about his history of trauma, specifically the amputation of his fingers at the age of 19 and his ADHD treatment as a child, section 1170, subdivision (b)(6)(A) would have required the court to impose the lower term. Section 1170, subdivision (b)(6)(A) requires courts to impose the lower term if a defendant's "psychological, physical, or childhood trauma" was a "contributing factor in the commission of the offense," unless the court determines the aggravating circumstances outweigh the mitigating circumstances. As noted, the court referenced information that was contained only in the original probation officer's report, suggesting it reviewed the report, and defendant's statement detailing his trauma history was attached to that report. More importantly, defendant has not shown how this history of trauma was a *contributing factor* to the current offense—breaking into an innocent family's home in the middle of the night at age 35 or 36 while under the influence of substances and assaulting the father, which is what the statute requires. (§ 1170, subd. (b)(6)(A).)

In sum, because defendant has not met his burden to establish prejudice from defense counsel's alleged failure to investigate and provide additional evidence about his

9

drug addiction history or mental health, his claim for ineffective assistance of counsel fails. (*Strickland, supra*, 466 U.S. at p. 687.)

C.      *Custody Credits*

Defendant contends, and the People concede, that the trial court erred when it failed to award defendant credit for actual days in custody from the original sentencing to the date of his resentencing. We agree.

Section 2900.1, specifies that "when a sentence is modified while in progress, the 'time' already served 'shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37.) "[H]aving modified defendant's sentence on remand, [the trial court] was obliged, in its new abstract of judgment, to credit him with all *actual* days he had spent in custody, whether in jail or prison, up to that time." (*Ibid.*)

We note that although the court held a post sentencing hearing to calculate presentence custody credits on April 23, 2024, defendant's sentence was pronounced and imposed on April 2, 2024. Defendant is entitled to credit for actual days in custody, up to and including the day of sentencing, April 2, 2024. (*People v. Smith* (1989) 211 Cal.App.3d 523, 527.) Therefore, we remand with instructions for the trial court to calculate defendant's credits, including his actual days in custody from the day after his original sentencing to the date of resentencing and amend the abstract of judgment to reflect his credits.

# III. DISPOSITION

The case is remanded for the trial court to calculate defendant's custody credits. The trial court shall amend the abstract of judgment to reflect the custody credits, including for actual time served, and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

WISEMAN, J.[*]

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11